**In re GRAND JURY SUBPOENAS DUCES TECUM DATED JUNE 13, 1983 AND JUNE 22, 1983.**

**No. 337, Docket 83–6256.**

United States Court of Appeals, Second Circuit.

Argued Sept. 28, 1983.

Decided Nov. 1, 1983.

---

Robert G. Morvillo, New York City (Gilda I. Mariani, Obermaier, Morvillo & Abramowitz, P.C., New York City, of counsel), for witness-appellant.

Peter J. Romatowski, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Andrew J. Levander, Barry A. Bohrer, Asst. U.S. Attys., New York City, of counsel), for U.S.

Before MANSFIELD, KEARSE and WINTER, Circuit Judges.

MANSFIELD, Circuit Judge:

Respondent-appellant, former President of Saxon Industries, Inc. (Saxon) who retained certain of that company's records after leaving its employment, appeals from an order entered in the Southern District of New York by Judge Abraham D. Sofaer holding him in contempt for refusing to produce the documents pursuant to a subpoena duces tecum issued by a grand jury sitting in the Southern District of New York. Appellant is the target of the grand jury's investigation into alleged fraud in the financial statements of Saxon which in 1982 filed a petition for reorganization under Chapter 11 of the Bankruptcy Reform Act. We reverse and remand.

In June 1983 a grand jury subpoena duces tecum was issued by the district court commanding appellant to produce all records of Saxon, its subsidiaries and divisions, in his possession.[1] When appellant, who had

---

1. One subpoena, dated June 13, 1983, directed appellant to produce for Saxon, its predecessor and subsidiary corporations and divisions thereof, and for Camden Industrial Sales Corp. and Mill Factors, originals or, if not available, copies of any and all books, records and documents of whatever description, including but not limited to:

"(a) records of any and all business conducted; including but not limited to notes, memoranda, correspondence, telexes, telephone logs, telephone bills and records, diaries and calendars used in connection with the business, officers', employees' and agents' personal files, contracts, bills, receipts, invoices, purchase orders, shipping records, price lists, brochures, financial statements, accounting and inventory records;

(b) corporate records; including but not limited to certificates of incorporation or partnership, minute books, corporate resolutions, stock certificates and records, corporate kit, corporate seals and stamps, shareholder lists, any lists of officers, employees and agents; and all evidence of the names of the principals or owners of the entities;

(c) bank, brokerage and other financial records; including but not limited to account statements, cancelled checks, deposit tickets, credit and debit memoranda and advices, wire transfers; promissory notes, loan agreements and any and all records pertaining to any and all advances of credit or payments or disbursements to or from the entities;

(d) records pertaining to any and all local, state and federal tax returns or liability, including but not limited to partnership and

ceased to be employed by Saxon in mid-1982, refused to comply, the government on July 7, 1983, moved to enforce the subpoena.[2] Appellant opposed on the grounds that most if not all of the Saxon documents in his possession were duplicates of records already in the government's hands and that his act of producing them would tend to incriminate him in violation of his Fifth Amendment rights, *see Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). On August 15, 1983, the district court granted the government's motion, holding that even though production of the documents would tacitly admit their existence and possession in appellant's hands, the possessor was not entitled to assert his act of producing corporate documents as a basis for a claim of compulsory self-incrimination in violation of the Fifth Amendment since "the act-of-production doctrine [enunciated by *Fisher*] only applies, if at all, to the nonrequired records of an individual or sole proprietor. *See United States v. Fox,* 554 F.Supp. 422, 425 (S.D. N.Y.1983)."[3] Appellant appeals from the district court's decision and subsequent order adjudging him in contempt for failure to produce the records.

## DISCUSSION

The Fifth Amendment provides, "No person ... shall be compelled in any criminal case to be a witness against himself." Beginning with *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), and continuing at least until *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), this privilege was construed to protect an individual from compulsory production of all of his personal records that might tend to incriminate him. The rationale has been that a person's papers represent his personal communications and that without such protection he could be subjected to coercion designed to extract the evidence from him in the same manner as if he were forced to testify against himself. *Couch v. United States,* 409 U.S. 322, 327–28, 93 S.Ct. 611, 615–16, 34 L.Ed.2d 548 (1973). To compel production of an individual's communications in oral or written form has been viewed as an invasion of his privacy that is inconsistent with the dignity and integrity of his person. As we stated in *United States v. Beattie,* 522 F.2d 267, 270 (2d Cir.1975), *vacated and remanded,* 425 U.S. 967, 96 S.Ct. 2163, 48 L.Ed.2d 791 (1976), *modified on remand,* 541 F.2d 329 (2d Cir.1976), "if an accused is forced to produce his own papers, with the consequence that the prosecutor can put them in evidence without further ado, he is in effect forced to take the stand if he wishes to dispute or explain them."

Thus, under *Boyd* and its progeny, the Fifth Amendment analysis was focused on the nature and content of the subpoenaed documents. On the one hand, private papers were held privileged, provided they

corporate tax returns, payroll tax returns, payroll Forms W–2, W–3, W–4 and Forms 1099;
(e) evidence of any and all transactions engaged in by [WITNESS] for or on behalf of the entity, whether conducted in his own name or in the name of the entity, including but not limited to any and all checks or withdrawals of funds drawn by [WITNESS] on any bank account of any of the entities.
B. If any items called for by this subpoena are withheld based upon a claim of privilege or otherwise, state the basis for such withholding and identify the nature of each such item by date, author, and recipient if any, and general contents so as to allow the matter to be litigated."
A second subpoena, dated June 22, 1983, commanded production of similar documents with respect to Mill Group Purchasing Associates, Inc.

2. Appellant advised that he had no records in his possession with respect to three of the companies.

3. Judge Sofaer questioned whether appellant's hand-written notations on some of the documents qualified as "personal" papers but allowed him to move for modification of the subpoena to exclude them. However, no such motion was made.

The district court's decision in *United States v. Fox* has since been reversed on the ground that the witness there was entitled to invoke his Fifth Amendment privilege with respect to production of the documents in that case—his sole proprietorship records sought by the IRS in connection with its income tax investigation—which might incriminate him. *See United States v. Fox,* 721 F.2d 32 (1983).

were in the personal possession of the person claiming the privilege. *Couch v. United States, supra,* 409 U.S. at 333, 93 S.Ct. at 618. On the other, an individual was not permitted to invoke the privilege with respect to records of an organization or collective entity. *Wilson v. United States,* 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911) (corporate records); *United States v. White,* 322 U.S. 694, 699, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944) (labor union); *United States v. Fleischman,* 339 U.S. 349, 357–58, 70 S.Ct. 739, 743–44, 94 L.Ed. 906 (1950) (Joint Anti-Fascist Refugee Committee); *McPhaul v. United States,* 364 U.S. 372, 380, 81 S.Ct. 138, 143, 5 L.Ed.2d 136 (1960) (Civil Rights Congress); *Curcio v. United States,* 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957) (labor union); *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974) (law partnership).

The reason for not permitting an officer or agent of a separate entity to refuse to produce its organization's records is that the privilege is purely personal and designed to protect the human being, not an artificial entity. The latter, being impersonal, has no human dignity needing protection. Its records are usually available to others within the entity and may not be treated as the private confidential papers of any one officer or employee. The officer creates or handles the records in a representative capacity, not on his own behalf. The records, moreover, do not belong to him but to the organization. He has no right to use the papers for his personal purposes, at least without the consent of the entity. To compel him to produce corporate records does not invade his personal privacy or violate his dignity or integrity as a person, protection of which is the aim of the Fifth Amendment. In addition, the organization, unlike the individual, is often the creature of the state, subject to visitation, obligated from its inception to make disclosures needed for enforcement of federal and state laws and subject to greater governmental control and regulation than the individual. *Bellis v. United States, supra,* 417 U.S. at 88–94, 94 S.Ct. at 2183–2186.

This "corporate records exception" was a logical reaction to the content-oriented approach of *Boyd.* The scope of the privilege was further reduced by a line of Supreme Court decisions holding that to qualify for the privilege the evidence sought to be withheld by the individual must be not only personal but communicative or testimonial in nature. Requiring a suspect to give a blood test, for instance, is not protected; "blood test evidence, although an incriminating product of compulsion, [is] neither petitioner's testimony nor evidence relating to some communicative act or writing by the petitioner." *Schmerber v. California,* 384 U.S. 757, 765, 86 S.Ct. 1826, 1833, 16 L.Ed.2d 908 (1966). *See, in accord, United States v. Wade,* 388 U.S. 218, 221–23, 87 S.Ct. 1926, 1929–30, 18 L.Ed.2d 1149 (1967) (identification lineup); *Gilbert v. California,* 388 U.S. 263, 265–67, 87 S.Ct. 1951, 1952–54, 18 L.Ed.2d 1178 (1967) (handwriting exemplars); *Holt v. United States,* 218 U.S. 245, 252–53, 31 S.Ct. 2, 6, 54 L.Ed. 1021 (1910) (modelling clothing).

In *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), the Court confirmed this narrowing of the protection that an individual may claim under the Fifth Amendment. *Fisher* held that a taxpayer may be compelled by subpoena to produce his accountant's workpapers in the taxpayer's possession. The Court reasoned that since the Fifth Amendment protected an individual only against compelled testimonial communications it was not violated by a subpoena directing him to produce papers already generated and in existence, which had not been prepared by him but by an independent accountant at his request.

"A subpoena served on a taxpayer requiring him to produce an accountant's workpapers in his possession without doubt involves substantial compulsion. But it does not compel oral testimony; nor would it ordinarily compel the taxpayer to restate, repeat, or affirm the truth of the contents of the documents sought. Therefore, the Fifth Amendment would not be violated by the fact alone that the papers on their face might incriminate the taxpayer, for the privilege protects a person only against being incriminated by his own compelled testi-

monial communications. *Schmerber v. California, supra; United States v. Wade, supra;* and *Gilbert v. California, supra.* The accountant's workpapers are not the taxpayer's. They were not prepared by the taxpayer, and they contain no testimonial declarations by him. Furthermore, as far as this record demonstrates, the preparation of all of the papers sought in these cases was wholly voluntary, and they cannot be said to contain compelled testimonial evidence, either of the taxpayers or of anyone else. The taxpayer cannot avoid compliance with the subpoena merely by asserting that the item of evidence which he is required to produce contains incriminating writing, whether his own or that of someone else." 425 U.S. at 409–10, 96 S.Ct. at 1580–81.

At the same time, however, the Court recognized that disclosure of contents of personal papers is not the only method of self-incrimination; a person may under some circumstances incriminate himself by the act of producing documents that tend to incriminate, whether or not they be personal. As the Supreme Court pointed out in *Curcio v. United States, supra,* 354 U.S. at 125, 77 S.Ct. at 1150, "[t]he custodian's act of producing books or records in response to a subpoena *duces tecum* is itself a representation that the documents produced are those demanded by the subpoena." This "act of production" doctrine was also confirmed by the Court in *Fisher:*

> "The act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the papers produced. Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena. *Curcio v. United States,* 354 U.S. 118, 125 [77 S.Ct. 1145, 1150, 1 L.Ed.2d

1225] (1957). The elements of compulsion are clearly present, but the more difficult issues are whether the tacit averments of the taxpayer are both 'testimonial' and 'incriminating' for purposes of applying the Fifth Amendment. These questions perhaps do not lend themselves to categorical answers; their resolution may instead depend on the facts and circumstances of particular cases or classes thereof." 425 U.S. at 410, 96 S.Ct. at 1581.

In the circumstances of the case before it the Court held that the Fifth Amendment did not entitle the taxpayer to refuse production of the accountant's papers because their existence and possession were not in issue and the taxpayer's production of them did not amount to his authentication of them since they had been prepared by a third party (the accountant). Under these circumstances the Court was "quite unprepared to hold that either the fact of existence of the papers or of their possession by the taxpayer poses any realistic threat of incrimination to the taxpayer." 425 U.S. at 412, 96 S.Ct. at 1581.

The Court left for another day the question of whether *Boyd* and its progeny would continue to shield a person from compelled production of his private incriminating papers. Doubt was cast on the continued viability of that long-standing principle, however, by the Court's shift of concern away from the contents of the subpoenaed documents.[4] Indeed, some view *Fisher* as abandoning *Boyd's* emphasis on the nature or contents of the documents, and as opting instead for an inquiry into the question of whether ordering their production will result in "compelled testimonial incrimination," 425 U.S. at 399, 96 S.Ct. at 1575. *See* Note, The Rights of Criminal Defendants and the Subpoena Duces Tecum: The Aftermath of *Fisher v. United States,* 95 Harv. L.Rev. 683 (1982).

---

**4.** It was this doubt that led Justices Brennan and Marshall to write separate concurring opinions divorcing themselves from the implications of the majority opinion that a person might no longer be protected by the Fifth

Amendment against production of his private papers except to the limited extent of not being required to admit their existence, authentication and possession if those facts were in issue.

■ It is against this uncertain backdrop that the witness in this case has tried to invoke the protection of the *Boyd* doctrine. He contends that since he disassociated himself from Saxon more than a year ago and no longer is an officer of that company the former corporate records in his possession, most of which apparently are copies of those retained by the company, have somehow become his personal papers and are therefore entitled under the Fifth Amendment to protection from compulsory disclosure. We disagree with this contention, which borders on the frivolous. The papers concededly belonged to the corporation before he departed with them. There is no evidence that ownership or possession of the papers was lawfully transferred to him; on the contrary, there is evidence that shortly after the company filed its Chapter 11 petition and before his departure he was seen cleaning out files in the company's offices and that he retained some original corporate documents of which no copies were kept by the company. The witness has no right to appropriate to himself corporate documents, whether originals or copies. As the Court noted under similar circumstances in *Wilson v. United States, supra,* 221 U.S. at 385, 31 S.Ct. at 546, an officer has "no personal right to retain the corporate books against any demand of government which the corporation was bound to recognize." *See United States v. Beattie, supra,* 522 F.2d at 272–73. The contents of the documents, except possibly for any personal notes written on them *after* the witness ceased to be employed by the company, which might be his own personal non-corporate thoughts, are not protected from disclosure by the Fifth Amendment. Thus, whatever the current scope of *Boyd's* protection—a question we do not reach today—these papers do not come within its purview.

■ The witness' next contention is more troublesome. Invoking *Fisher,* he argues that even if the contents of the corporate documents must be disclosed, he is entitled under the Fifth Amendment to refuse to produce them because his act of producing them would amount to an attestation that he has possession of them. His admission that he possesses them, he argues, when viewed with other circumstances in the case, would provide the basis for an inference that he has guilty knowledge of their potentially incriminating contents and that he removed them from company files to prevent disclosure of his guilty knowledge. His post-employment possession, he contends, is therefore an issue in the case; to require him to engage in the act of producing the documents pursuant to subpoena would amount to testimonial compulsion in violation of his Fifth Amendment rights.

The district court did not resolve this claim, choosing instead to accept the government's position that the *Fisher* act of production doctrine simply does not apply to corporate records. We believe that the district court erred in rejecting this contention out of hand solely on the ground that corporate documents were demanded by the subpoena. Under *Fisher* the standard is not the potential incriminating nature and contents of the documents subpoenaed but whether their mere production would itself tend to incriminate the possessor. It is true that if the witness were still a Saxon officer or employee he would normally be obligated as a representative of the company to produce its documents, regardless of whether they contained information incriminating him, *Bellis v. United States, supra,* 417 U.S. at 88–89, 94 S.Ct. at 2183–84; *United States v. White, supra,* 322 U.S. at 699, 64 S.Ct. at 1251, or were written by him as a corporate officer, *Wilson v. United States, supra,* 221 U.S. at 378, 31 S.Ct. at 543; *Fisher v. United States, supra,* 425 U.S. at 410 n. 11, 96 S.Ct. at 1580 n. 11; *United States v. Beattie, supra,* 522 F.2d at 271–74. But that is because there would rarely be any dispute over possession when the person subpoenaed is required to respond in his representative capacity. In producing records as an officer of the company he would not be attesting to his personal possession of them but to their existence and possession by the corporation, which is not entitled to claim a Fifth Amendment privilege with respect to them.

Once the officer leaves the company's employ, however, he no longer acts as a

corporate representative but functions in an individual capacity in his possession of corporate records. Although his possession of them as a private citizen may have been derived from his wrongful misappropriation of them from the corporation, we do not view such conduct as depriving him, once the documents are in his personal possession (rather than as a corporate representative), of his right under the Fifth Amendment to invoke the act of production doctrine outlined in *Fisher.* It is elementary that a person need not be guiltless to qualify for invocation of the Fifth Amendment. For the purpose of determining the extent to which a natural person may invoke his Fifth Amendment privilege under *Fisher,* the fact that the subpoenaed documents in his possession were prepared by a corporation is not directly relevant. The *Fisher* doctrine simply does not turn on either content or authorship of the documents; it is the fact, and the circumstances, of *possession* that are controlling. *Couch v. United States, supra.* If, as the Supreme Court indicated in *Fisher,* the act of production doctrine applies to one type of otherwise unprivileged document (accountant's workpapers) it can apply as well to corporate records in an individual's possession. Indeed, in *In re Katz,* 623 F.2d 122, 125–26 (2d Cir.1980), we held that under the circumstances of that case the act of production doctrine was applicable to a grand jury subpoena for corporate documents.[5] To the extent that only a portion of the Saxon documents might have a self incriminating effect, the District Court may utilize appropriate procedures to determine which documents are and which are not subject to the privilege.

There remains the question of whether the witness' compelled production of the records in this case, quite aside from their contents, could reasonably be viewed as tending to incriminate him. In *Fisher* the Court held that the question does not lend itself to a categorical answer but must "depend on the facts and circumstances of particular cases or classes thereof." 425 U.S. at 410, 96 S.Ct. at 1581. Since the taxpayer's possession of his tax accountant's records in that case was undisputed and unlikely to incriminate him his production of the subpoenaed documents did not pose "any realistic threat of incrimination." 425 U.S. at 412, 96 S.Ct. at 1581. It is undoubtedly true, as the Court recognized, that in most cases the possession and production of documents by the person subpoenaed would add "little or nothing to the sum total of the Government's information." 425 U.S. at 411, 96 S.Ct. at 1581. But the subpoenaed witness here has advanced a colorable claim that his formal testimonial admission by his production of the documents that he possesses them would tend to corroborate evidence that he misappropriated this evidence from Saxon; it would thus enable the government to argue in any criminal proceeding against him that his removal of the documents from the company's files amounted to a tacit admission that he had knowledge of their incriminating contents and absconded with them because he believed they were "smoking gun" evidence of his guilt. Accordingly we remand the case to the district court to determine, after considering such relevant evidence as the parties may offer, whether appellant's production of the Saxon documents, regardless of their contents, might have the self-incriminatory effect ascribed thereto by appellant.

**5.** The government argues that for purposes of determining the applicability of the act of production doctrine corporate documents should be treated the same as required records kept pursuant to a regulatory scheme, *Shapiro v. United States,* 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948), production of which is not protected by the Fifth Amendment. *In re Doe,* 711 F.2d 1187, 1192–93 (2d Cir.1983); *In re Grand Jury Proceedings,* 601 F.2d 162, 171 (5th Cir.1979). We disagree. The governmental requirement that they be kept implies an obligation to produce them upon the government's demand, which amounts to a waiver of any Fifth Amendment claim with respect to the act of production. Moreover, since they are required to be kept, production of them can hardly provide the basis for an inference of criminality in possessing them. For these reasons the exception with respect to production of required records does not apply to production of corporate records of the type kept here.

We note, however, that should production itself be potentially incriminatory, the government could either by stipulation or by obtaining a grant of immunity pursuant to 18 U.S.C. §§ 6002–6003, immunize the act of production; such immunity would preserve the appellant's Fifth Amendment rights with respect to his conduct in producing the documents, *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).[6] As for any post-employment notes written by appellant on the documents the district court may determine by *in camera* inspection whether they are protected from disclosure. *See United States v. Fox, supra,* note 3.

Reversed and remanded for further proceedings consistent with the foregoing.

---

**6.** Indeed the government has conceded that the problem of self-incrimination through act of production could be obviated by immunization. Gov't Brief at 4.