**In the Matter of the Petition of the FEDERAL DEPOSIT INSURANCE CORPORATION To Enforce Subpoena Duces Tecum Number 0007 served upon Theresa Shieh pursuant to 12 U.S.C. 1818.**

**No. M–18–304 (LBS).**

United States District Court, S.D. New York.

Aug. 7, 1986.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for petitioner; Barry Willner, of counsel.

Neal J. Hurwitz, New York City, for respondent; Neal J. Hurwitz, Brigid Hogeland, of counsel.

SAND, District Judge.

On December 12, 1985, we delivered an oral Opinion (attached hereto in redacted and slightly modified form and incorporated by reference),* in which we held that Theresa J. Shieh ("Shieh") was required to turn over to the Federal Deposit Insurance Corporation ("FDIC") any documents in her possession that are "required records" as that term has been defined. *See* Appendix *infra*. We then referred the matter to Magistrate Dolinger to determine which, if any, of the questioned documents could be so categorized. After making an *in camera* inspection of the documents and receiving an affidavit from Shieh, the Magistrate issued a Report and Recommendation finding none of the documents to be "required records."

---

\* The FDIC has requested publication of the oral Opinion because of the recurring nature of the problem addressed therein. *See* Objections of the FDIC to the June 16, 1986 Report and Recommendation of Magistrate Dolinger at 4 n.\*.

Over the objection of the FDIC, we hereby adopt and approve in full the Magistrate's well-reasoned Report. Whatever the FDIC may have shown about requirements that the Golden Pacific National Bank ("the Bank") record the information contained in the questioned documents, they have failed to demonstrate that these specific documents themselves were required to be kept.

SO ORDERED.

## APPENDIX

### (Oral Decision of Judge Sand:)

THE COURT: This proceeding is brought by the Federal Deposit Insurance Corporation ("FDIC") to enforce a subpoena *duces tecum* issued pursuant to 12 U.S.C. sections 1818(n) and 1820(c) as part of an investigation to determine whether the Golden Pacific National Bank ("the Bank"), which closed on or around June 21, 1985, had complied with federal banking laws and regulations.

Most of the material facts leading up to this proceeding are not in dispute. As part of its investigation, on September 3, 1985 the FDIC served both a subpoena *ad testificandum* and a subpoena *duces tecum* on Theresa J. Shieh ("Shieh"), who had been cashier and Executive Vice President of the Bank prior to its closing. The subpoenas were served on Shieh in her individual capacity and not as a representative of the Bank.[1] The subpoena duces tecum called for the production of:

any and all documents embodying, reflecting, relating or referring in any way to the former Golden Pacific National Bank, New York, New York, including, but not limited to, yellow certificates, international banking facility deposits, loan production office deposits, bank statements, account ledgers, canceled checks, deposit slips, and other records of any kind embodying, reflecting, relat-

ing or referring in any way to Golden Pacific National Bank.

It is the FDIC's position that Shieh may have taken the subpoenaed bank records "with her when she left the bank after it was closed." Memorandum in Opposition to Petition of FDIC to Enforce the Subpoena, page 9 (quoting counsel for the FDIC). Shieh, who neither confirms nor denies that she currently possesses the records, stands willing to respond to the subpoena *ad testificandum* but resists the subpoena *duces tecum.* One of her principal contentions is that even though the contents of the documents are not privileged, the act of producing the documents is privileged because such an act would violate her Fifth Amendment right against self-incrimination.

At the request of counsel for Shieh, and over the objection of the FDIC, the court afforded counsel an opportunity in an *ex parte* proceeding, the transcript of which the court has ordered sealed, to advise the court of the existence of any special circumstances not disclosed in open court which would cause production of the documents to be incriminatory. There are two aspects of that *in camera* presentation. One aspect relates to the nature of the documents themselves and whether they may fairly be characterized as "required records," and we will deal with that later in this opinion. The other aspect of that presentation relates to whether or not the production of the documents, assuming them to be "required records," would be incriminatory under circumstances which would permit the valid invocation of Fifth Amendment rights. With respect to that latter issue, there was a reassertion of the views expressed by counsel for Shieh, appearing at page 9 of the Memorandum in Opposition to the Petition of FDIC to Enforce Subpoena:

"The reasonableness of Shieh's fear in this case is poignantly demonstrated by the words of counsel for the FDIC at oral argument on December 3, 1985, when he

---

**1.** In answer to the Court's oral inquiry, when the matter was first brought before me in Part 1, whether the issues presented herein could not be obviated by directing the subpoena "to the bank by Shieh, its representative," counsel for the FDIC responded that the FDIC now stands in the shoes of the Bank and could not subpoena itself.

stated, 'They are documents that she took with her when she left the bank after it was closed.' Whether or not this is a factually accurate statement, it speaks for itself as an incriminating conclusion inferred from the fact of possession. Aside from the inference that the documents were wrongfully acquired, there may be inferences as to motive—to hide incriminating evidence (guilty knowledge of their contents), intent to obstruct justice by removing evidence, perhaps an element of conspiracy in that taking the documents was an act in furtherance of some illegal scheme, and so on. Surely it is not hard to see that there is a possibility that the fact of Shieh's possession and production may provide a link in a chain of evidence that may incriminate her, especially when there are both federal and state criminal investigations of the Golden Pacific National Bank in addition to the FDIC investigation."

Assuming for these purposes, and at this point in our analysis, that the subpoenaed records fall within the category of "required records," it remains to determine whether the Fifth Amendment to the United States Constitution accords a privilege against the requirement that they be produced because they might incriminate Miss Shieh in the manner asserted by her counsel. We find that it would not.

We begin by turning to this Circuit's decision in *In Re Grand Jury Subpoenas Duces Tecum*, 722 F.2d 981 (2d Cir.1983) (hereinafter *"Saxon Industries"*). In this case the Second Circuit held that a former corporate officer could invoke the Fifth Amendment privilege in refusing to turn over certain corporate records he had in his possession where the act of production of those records would effectively be a communication by the officer that he had indeed taken the records when he left his employ; that from such a communication an inference could be drawn about the officer's consciousness of his own guilt. *Saxon Industries* informs us that the court's focus was not on the incriminatory nature of the contents of the records in question which the court there held would not be protected, but on the self-incriminating communication that the officer would be compelled to make by his act of producing the documents. The Second Circuit relied on several Supreme Court cases, including *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) and *Curcio v. United States*, 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957), which held that "[t]he standard is not the potential incriminating nature and contents of the documents subpoenaed but whether the mere production would itself tend to incriminate the possessor. *Saxon Industries, supra*, 722 F.2d at 986. In *Saxon Industries*, the court reasoned that even though a current officer could be compelled to produce records, no self-incrimination could result from such an act because the officer merely would be producing the records as a corporate representative—"Once the officer leaves the company's employ ... he no longer acts as a corporate representative but functions in an individual capacity in his possession of corporate records." Id. at 986–987. *See also In Re Two Grand Jury Subpoenae Duces Tecum*, 769 F.2d 52, 59 (2d Cir.1985) (explaining and distinguishing *Saxon Industries*); *U.S. v. Roe*, 775 F.2d 43, 46 (2d Cir.1985).

Shieh urges that inasmuch as she is no longer employed by the Bank and that, as already noted, the subpoena is directed to her individually, *Saxon Industries* is controlling here.[2]

---

**2.** Shieh also states that it would be impossible to comply fully with the subpoena *duces tecum* because some of the requested documents were kept in a safe deposit box and others in her desk and that they have been confiscated by the Federal Bureau of Investigation pursuant to a search warrant. Of course, to the extent that any documents are not in her possession or subject to her control, they cannot be reached by this subpoena. If, however, Miss Shieh's position is that return of the documents now in the possession of the Federal Bureau of Investigation is the quid pro quo for her compliance with this subpoena, that position is an untenable one.

The FDIC, on the other hand, contends that Saxon Industries does not apply because the records sought here, unlike those in *Saxon Industries,* are records that were required by law to be kept by the Bank. And, as I have already noted at this point in our analysis, we are assuming that the records in fact fall within that category. Such so-called "required records," the FDIC urges, are controlled by a separate body of case law that holds that the custodian of these records has no Fifth Amendment protection against the act of producing them. *See Shapiro v. United States,* 335 U.S. 1, 32–36, 68 S.Ct. 1375, 1391–1393, 92 L.Ed. 1787 (1947); *In re Doe,* 711 F.2d 1187, 1192–93 (2d Cir.1983); *In re Grand Jury Proceedings,* 601 F.2d 162, 171 (5th Cir.1979). The FDIC stresses the language and reasoning of the court in footnote 5 of *Saxon Industries,* 722 F.2d at 987 n. 5. There, the Second Circuit rejected an argument made by the government that the corporate records in question should be treated the same as "required records," with a consequence that the former corporate employee having custody of the records would have no Fifth Amendment privilege. The Court stated two reasons why the government's analogy of the corporate records in *Saxon Industries* to "required records" should be rejected. One of those reasons was that "Since ... [required records] are required to be kept, production of them can hardly provide the basis for an inference of criminality in possessing them." Id. This reason, standing alone, would seem to support Shieh's position, because Shieh, who as a bank employee was required to keep the records, was under no similar obligation to take the records after her employment had terminated. Indeed, it is Shieh's contention, as noted above, that if she took the "required records" with her after her official capacity had terminated, evidence of this might have the very incriminating effect of which she complains.

There is, however, a second reason advanced in footnote 5 to Saxon Industries why the custodian of "required records," unlike the custodian of corporate records, has no Fifth Amendment privilege against producing those records: "The governmental requirement that ... [the records] be kept implies an obligation to produce them upon the government's demand, which amounts to a waiver of any Fifth Amendment claim with respect to the act of production." Id. *See also In re Kenny,* 715 F.2d 51, 53 (2d Cir.1983) ("The 'required records' exception provides that documents maintained pursuant to a valid regulatory scheme possess certain 'public aspects' sufficiently analogous to 'public documents' to warrant limited disclosure notwithstanding Fifth Amendment concerns."); *Donovan v. Mehlenbacher,* 652 F.2d 228, 231 (2d Cir. 1981) (same); *In re Grand Jury Proceedings,* 601 F.2d 162, 171 (5th Cir.1979) ("The proper designation by the government of certain records to be kept by an individual necessarily implies an obligation to produce them, and limited implied testimonial authentication"). In light of this stated rationale for the "required records" doctrine, we believe that Shieh's claim that she has a privilege against production insofar as "required records" are concerned is not validly asserted. The court in *Saxon Industries* did not reject the analogy to "required records" on the grounds that the then custodian of the records—that is, the subpoenaed former President of Saxon Industries—no longer had any obligation to keep the records. Had that been the basis of the court's reasoning, the "required records" exception obviously would not apply to Shieh, who is also a former employee. However, the court wrote that the doctrine "did not apply to production of corporate records of the type kept here." In other words, the "required records" analogy was rejected because of the nature of the documents there in question, not because the person under subpoena was no longer required to keep the records. If one deals with this in terms of waiver, as some courts have done, one would say that that the privilege is waived with respect to "required records."

Waiver is a concept which is used in a variety of senses. When we talk about waiver in terms of right to counsel, we talk

about knowing, intentional waiver which relates to the actual state of mind of the person waiving a right under the Constitution. When we talk about waiver of a privilege with respect to "required records," we are not dealing with the state of mind of the person under subpoena. We are dealing with the legal consequences which, as a matter of public interest and for the purposes of the privilege against self-incrimination, will attach to the possession of "required records." Thus, if one were to say that while Miss Shieh served as a bank officer, she waived any Fifth Amendment privilege with respect to records which were required by law to be kept by the bank, one would further say that when as a former bank officer she chose to take custody of these records, she further waived her right to resist their production because of the nature of the documents she took into her possession. Indeed, as a matter of policy there is much to be said for that conclusion. A contrary conclusion creates an inordinate incentive for an ex-employee of a governmentally regulated body to take into his personal possession documents which the law required that body to keep if the consequence of that would be to immunize those documents, as to which no privilege otherwise attaches, from governmental scrutiny.

Assuming, again, that the records are "required records," the difficulty in Shieh's position is further highlighted by the fact that she would be using the Fifth Amendment to shield her from turning over to a quasi-governmental agency the records that in fact belonged to the Bank and therefore belonged to the FDIC in its capacity as the successor in interest of the Bank. To the extent to which we deal with "required records", we are dealing with the Bank's property in Shieh's possession. In essence, Shieh is refusing to produce property rightfully belonging to the party subpoenaing the documents, which led this Court to observe at the prior hearing that to some extent the action was akin to one in replevin.

We note here that there is no question as to Miss Shieh's former capacity and relationship to the Bank. This is not a case in which production of the documents would provide a link between the person having possession of the documents and the entity from which the documents were taken, a consideration which in some circumstances has led courts to say that there is a privilege against production.

We are acutely aware of the fact that the "required records" exception to the "act of production" doctrine has been explicitly questioned in a recent Second Circuit opinion. *See United States v. Edgerton*, 734 F.2d 913, 918 n. 4 (2d Cir.1984). Shieh cites two other Second Circuit opinions that she says either criticize or question the vitality of the "required records" exception. Neither case, however, is on point here. In *In re Katz*, 623 F.2d 122, 126 (2d Cir.1980), while the court did hold that compelled production of a "public document" may be a testimonial and incriminating communication such that it is entitled to Fifth Amendment protection, the *Katz* case involved a situation where the production of the document by the attorney for the party claiming the privilege would have been communicative of that party's connection with a corporation that was allegedly involved in criminal activity. As we have already noted, the linkage between Miss Shieh and the Golden Pacific National Bank is not at issue here. Thus, in *Katz*, while the documents themselves may have been public, the connection of the party with those documents was not public. Moreover, the *Katz* court made no finding that the subpoenaed documents were "required records" and made no reference to either the "required records" doctrine or the cases normally cited in that regard.

In Judge Friendly's dissent in *In re Doe*, 711 F.2d 1187 (2d Cir.1983), the other opinion cited by Shieh as indicating the dubious vitality of the "required records" exception, the criticism was based on that aspect of the doctrine which allowed the compelled production of a person's "own records of business dealings under circumstances when he cannot be required to testify

about such dealings." Judge Friendly dissented from the application of the "required records" exception to a physician's patient records, observing that Congress had made no determination that enforcement of the narcotics laws requires doctors to maintain patients' files and produce them before grand juries; here there is a direct relationship between the purposes for which a bank is required to keep records and the functions of the FDIC and the purposes for which the subpoena is issued.

The Bank and its employees are also currently the subject of a criminal investigation by the United States Attorney for the Southern District of New York. Counsel have independently, and with the encouragement of the court, explored with that office the possible obtaining immunity for Miss Shieh with respect to the act of production, i.e., immunity relating not to the contents of the documents but to matters which might arise by virtue of her present possession of the documents. We have been advised by counsel both for Miss Shieh and the FDIC that these efforts to obviate the question by obtaining immunity have been unsuccessful. See Memorandum in Opposition to Petition of FDIC to Enforce Subpoena at 9.

Further distinguishing this situation from the circumstances which underlie the reasoning of Judge Friendly's partial dissent in *In re Doe* is the fact that Miss Shieh claims only that the act of producing the record is barred by the Fifth Amendment, not the contents of the records, which would be revealed by such an act. Indeed, as noted, she does not resist the subpoena *ad testificandum.*

For those reasons, recognizing that in some respects this is an issue of first impression in an area of the law which it may fairly be stated is uncertain and transitional, we conclude that insofar as the subpoena calls for "required records" in Shieh's possession or control, Shieh does not have a valid Fifth Amendment right not to produce such documents.

We turn, then, to the description of the documents contained in the FDIC's subpoena. See *supra.* That description is an extremely broad one, encompassing any document embodying, reflecting, relating or referring in any way to the former Golden Pacific National Bank. I do not understand—but counsel will correct me if I am in error—that the FDIC takes the position that any document which refers in any way to the Bank is a "required record." The courts have defined "required record" to embody a three-part test: "(1) the requirement that they be kept must be essentially regulatory, (2) the records must be of a kind which the regulated party has customarily kept, and (3) the records themselves must have assumed 'public aspects' which render them analogous to public documents." *In re Doe, supra,* 711 F.2d at 1191 (citing *Grosso v. United States,* 390 U.S. 62, 67–68, 88 S.Ct. 709, 713, 19 L.Ed.2d 906 (1968)).

Assuming arguendo that some of the documents in Miss Shieh's possession are "required records" and some are not, it would be the Court's view that to the extent to which the documents are not "required records," they are then corporate records similar to those which the Court dealt with in *Saxon.* Assuming, and it is a safe assumption, that it is the position of counsel for Shieh that some of the documents which (without concession but for purposes of this proceeding) may be said to be in her possession, fall outside the scope of "required records," there remains the question of who is to make a determination which records do or do not fall in that category. That is a determination which this Court does not feel that it is capable of making at this time, for a number of reasons. First, there is, as noted, the breadth of the FDIC subpoena. One possibility is simply for the Court to place a gloss upon the language to say it will, however, be limited to those documents which are "required records" in her possession and subject to her control. But I am not, at least at this point, an expert on what records are required to be kept by a bank, and the FDIC has given me at this juncture no guidance on that. I recognize that banks

■

are a heavily regulated industry and are required to document fully their activities. One would not have to quarrel, for example, with the proposition that a duplicate of a certificate issued to a customer of the bank evidencing a transaction in which moneys were involved was a "required record." Does that mean that any document which in any way refers to such a certificate is a "required record"? I simply don't know, and I am seeking guidance from counsel as to how to proceed.

One way, obviously, to the extent to which the FDIC knows what it is looking for and knows that what it is looking for is clearly a "required record," is to require the FDIC to issue a new and more specific subpoena. The second step, which may be a necessary step if it can't otherwise be obviated, is to provide the court with copies of relevant regulations or provisions on which the FDIC relies, so that this court or some other judicial officer, such as a magistrate to whom the task is assigned, can inspect the documents to see whether they fall within the "required records" exception or not. I will hear in a moment from counsel as to their views on how that inquiry should proceed.

I have been given no real enlightenment by the parties, particularly by counsel for the FDIC, as to the urgency of this matter. I have assumed, as is evidenced by the fact that I am making my ruling at this time and in the form of an oral opinion, that the matter is one which is of some urgency. I should say that, if requested by counsel for Miss Shieh, I would grant a reasonable stay of enforcement of any subpoena to enable an appellate review. In that regard I note that if one looks at the very last word spoken by the Second Circuit with respect to the "required records" exception, one would look to the *United States v. Edgerton,* 734 F.2d 913, 918 n. 4 (2d Cir. 1984) in which the Court stated: "Whether the required records exception, which was a response to the Boyd privacy rationale, is

still viable after the shift away from the privacy rationale, remains to be decided."

This case might indeed provide the Second Circuit with the opportunity to make that decision,** unless, of course, in light of the Court's willingness to grant a stay and the difficulties which may or may not exist—and I will hear from counsel on that in a moment—as to the categorization of the documents as falling within or without the "required records" exception, counsel for the FDIC and counsel for Shieh want to again jointly renew their discussions with the United States Attorney's Office concerning a possible grant of immunity limited solely to those matters implicated by possession of the documents as distinguished from their contents.

■

** This Opinion was rendered on Dec. 12, 1985 prior to the decision of the Court of Appeals for the Second Circuit in *In re Two Grand Jury Subpoena Duces Tecum,* 793 F.2d 69 (2d Cir. 1986).