PACIFIC MUTUAL LIFE INSURANCE COMPANY, a California Corporation, the Paul Revere Life Insurance Company, a Massachusetts Corporation, Plaintiffs,

v.

AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Arlington Place Partners, Arlington Place II Limited Partnership, Douglas W. Dodds, P. Schubert and Sone, Inc., and Harry Yourell, Defendants.

No. 86 C 0203.

United States District Court,
N.D. Illinois, E.D.

Oct. 20, 1986.

Eric A. Oesterle, Sonnenschein, Carlin, Nath & Rosenthal, Chicago, Ill., for plaintiffs.

John Klich, Joseph Sanders, Chicago, Ill., Dennis Buyer, Buyer & Scherb, Niles, Ill., Thomas D. Decker, Chicago, Ill., for defendants.

Lionel G. Gross, Altheimer & Gray, Chicago, Ill., for intervenor.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

■ The Court is asked to determine whether the "act of production" doctrine applies to a general partner who refuses to produce the documents of his partnership in response to discovery requests. This doctrine permits an individual to assert the Fifth Amendment privilege against self-incrimination in refusing to physically produce subpoenaed documents where such production, as opposed to the content of the documents, has potentially incriminating testimonial ramifications. *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984); *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). This dispute was originally referred to Magistrate W. Thomas Rosemond, Jr. who found in his Report and Recommendation that no such privilege could be invoked by defendant Douglas W. Dodds, who has now filed objections to that finding. For the reasons stated below, we overrule Dodds' objections and adopt the Magistrate's Report and Recommendation.[1]

The underlying suit is a mortgage foreclosure action against Dodds and other defendants holding an interest in the mortgaged property. Dodds is the general partner of one limited partnership (defendant Arlington Place Partners) which in turn is the general partner of another limited partnership (defendant Arlington Place II Lim-

---

1. In reviewing a magistrate's report and recommendation on a nondispositive pretrial matter, this Court must set aside any portion of the magistrate's order which is "clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a).

ited Partnership), which is the sole beneficiary of a land trust holding title to the property in dispute. In discovery, the intervenors (limited partners in one of the partnerships) sought certain partnership records which they deemed relevant to their defense of the foreclosure.[2] On June 26, 1986, Dodds moved for clarification of this Court's May 30, 1986 order requiring Dodds to produce documents important to the plaintiff-mortgagee's maintenance and operation of certain premises at issue, and for a protective order regarding the documents in question. Similarly, the intervenors moved to compel Dodds' production of those documents. Magistrate Rosemond ordered that Dodds must produce the documents and stated that because Dodds was doing so in his representative capacity as a general partner, his act of producing the records "has no testimonial evidentiary significance, incriminatory or otherwise."[3]

The act of production doctrine was first acknowledged as an independent basis for the Fifth Amendment privilege in *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). *Fisher* resolved companion cases involving the privilege claims of attorneys representing individual taxpayers whose accountants' records were subpoenaed. The attorneys held the records for the taxpayers for the purpose of preparing a defense to anticipated civil and criminal tax proceedings. After first deciding that the documents could only be privileged from production by the attorneys if they would have been privileged had they been in the taxpayers' hands, the Court proceeded to determine whether the taxpayers would have a privilege against the act of producing the documents. The

Court noted that "wholly aside from the contents of the papers produced," the physical act of producing documentary evidence may in some circumstances have testimonial significance as a tacit communication that the documents exist, that the subpoenaed individual possesses them and that she is authenticating those documents as those described in the subpoena. *Id.* at 410, 96 S.Ct. at 1581.

In elaborating on this theme, the Court said that the question of whether these tacit averments are both "testimonial" and "incriminating" for Fifth Amendment purposes does not lend itself to categorical answers and that "resolution may instead depend on the facts and circumstances of particular cases or classes thereof." *Id.* At least in that case, however, the Court rejected the proposition that implicitly admitting the existence and possession of the papers rose to the level of a privileged testimonial communication. The Court decided that "[t]he existence and location of the papers are a foregone conclusion and the taxpayer adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers." *Id.* at 411, 96 S.Ct. at 1581. With respect to tacit authentication, the Court found that the taxpayers were not in a position to give authenticating testimony since the documents in question were prepared by their accountants. Accordingly, the act of production was not a testimonial, incriminating communication in that respect either. *Id.* at 412–13, 96 S.Ct. at 1582.

The act of production doctrine reappeared in *United States v. Doe*, 465 U.S.

---

**2.** There already has been an agreed order entered before the magistrate regarding one category of documents which Dodds agreed to produce on the condition that his disclosure would not be deemed a waiver of his Fifth Amendment privilege. The second category of documents, those which Dodds refused to produce, consists of the following: (1) all paid bill files for Arlington Place II for years 1981 through 1986; (2) copies of all 1981 through 1985 tax returns, audit reports and compilations and a copy of the March 31, 1986 quarterly compilation; (3) all operating statements between January 1,

1981 up through and including May 31, 1986 on a month-by-month basis; (4) January 1, 1981 through May 31, 1986 general ledgers; (5) the 1985 and 1986 Arlington Place II budgets; (6) all bank statements and bank reconciliations for all accounts relating to Arlington Place II.

**3.** The magistrate also ruled that Dodds could assert his personal Fifth Amendment privilege against compelled testimonial self-incrimination at his deposition. There have been no objections to that ruling.

605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), where the Court upheld the privilege claim of the individual owner of several sole proprietorships who had successfully moved to quash government subpoenas for the records of his proprietorships. In a brief discussion premised on the district court's factual finding that the act of production would have potentially incriminatory testimonial effects, the Court followed the *Fisher* opinion and held that a privilege against self-incrimination applied to the act of production by the sole proprietor. *Id.* at 612–14, 104 S.Ct. at 1242–43. The Court did not clarify, however, whether the act of production doctrine would apply to an individual asserting the privilege when subpoenaed for the records of a collective entity or if its act of production analysis was treating the respondent as an individual rather than a business record custodian. In the latter case, the Court simply would have been applying the previously established rule from *Fisher*.

 Balanced against the protection of individuals from compelled documentary disclosure which has testimonial and incriminatory aspects is the long-standing rule that collective business entities have no privilege against self-incrimination. *Bellis v. United States*, 417 U.S. 85, 90, 94 S.Ct. 2179, 2184, 40 L.Ed.2d 678 (1974). Moreover, at least with respect to the *content* of the business documents, no individual custodian of business documents can assert a personal Fifth Amendment privilege claim even if there are incriminatory statements in those records. *Id.* at 88, 94 S.Ct. at 2183. This is known as the "collective entity rule." In *Bellis*, the government subpoenaed records of a partnership undergoing dissolution from one of the former partners who had taken those records. The partner refused to produce the subpoenaed documents and was held in contempt. The Court ultimately affirmed the finding of contempt, expressing its continued support of the collective entity rule.

 While factually similar to the present case, *Bellis* does not control the question to be resolved here. The Court's discussion regarding the inability of a partner to assert a privilege from producing partnership documents clearly refers to the alleged privilege regarding the *content* of the documents and not the incriminatory or testimonial aspects of the actual act of producing them. In fact, although the concept of a Fifth Amendment privilege from the "act of production" had been articulated in earlier cases, *see, e.g., Curcio v. United States*, 354 U.S. 118, 125, 77 S.Ct. 1145, 1150, 1 L.Ed.2d 1225 (1957), its use as a separate analytical basis for the privilege was not really sanctioned by the Court until *Fisher* was decided, two years after *Bellis*. Another problem with reliance on *Bellis* is that the entire focus of the opinion is in terms of personal property and individual privacy interests as the underpinnings of the Fifth Amendment privilege. The Court rejected the partner's assertion of privilege because he lacked any property interest in the partnership records and there was only a minimal intrusion on any expectation of privacy he might have had. *Bellis*, 417 U.S. at 91–95, 94 S.Ct. at 2184–86. The Court has since departed from its historical emphasis on property and privacy interests, opting instead for an analysis more faithful to the language of the Fifth Amendment. *Fisher*, 425 U.S. at 401, 96 S.Ct. at 1576. Thus, the inquiry regarding the self-incrimination privilege is whether the witness is being compelled to give a testimonial communication which would potentially incriminate her. *Id.* at 408, 96 S.Ct. at 1579.

Lying in the wake of these three key Supreme Court privilege decisions is a controversy over the extent to which the collective entity rule and the act of production doctrine limit one another. A split between the circuit courts has developed, but the Seventh Circuit has not yet chosen a side. *See In re Grand Jury Proceedings (Morganstern)*, 771 F.2d 143 (6th Cir.) (*en banc*), *cert. denied*, —— U.S. ——, 106 S.Ct. 594, 88 L.Ed.2d 574 (1985); *In re Two Grand Jury Subpoenae Duces Tecum*, 769 F.2d 52 (2d Cir.1985); *In re Grand Jury Subpoenas Duces Tecum*, 722 F.2d 981 (2d

Cir.1983); *In re Grand Jury Matter (Brown)*, 768 F.2d 525 (3d Cir.1985) (*en banc*).

Both the intervenors and the magistrate cite the Sixth Circuit's application of the Fifth Amendment privilege to an act of production case in *In re Grand Jury Proceedings (Morganstern)*, 771 F.2d 143 (6th Cir.) (*en banc*), *cert. denied,* — U.S. —, 106 S.Ct. 594, 88 L.Ed.2d 574 (1985). In *Morganstern* a subpoena duces tecum was issued to individuals who were custodians of partnership and corporate records. The court, which relied heavily on the continued validity of *Bellis* and the collective entity rule, held that *Fisher* and *Doe* did little to change the nature of the Fifth Amendment privilege for the holders of collective entity documents. It interpreted *Fisher* as providing a narrowly limited application of the act of production doctrine to individuals whose personal records were subpoenaed. The court pointed out that *Fisher* emphasized the "distinction between personal records and those of a collective entity ... in particular the fact that one who produces the records of a collective entity acts in a purely representative capacity." *Id.* at 146. The key to the *Doe* decision, according to the court, was the fact that a sole proprietorship is not a collective entity, thus, the individual in *Doe* was acting in his individual capacity regarding documents in which he had a personal property interest rather than as a representative of his business. *Id.* at 147. In rejecting the custodian's privilege claim, the court concluded:

> Since collective entities can act only through officers and agents, the effect of permitting custodians of partnership and corporate records to avoid production of such records in reliance on the Fifth Amendment would be to extend the privilege against self-incrimination to the collective entities. The custodian of corporate or partnership records acts only in a representative capacity, not as an individual, and production of the records is not a testimonial act of the custodian. Production of the records communicates nothing more than the fact that the one

producing them is a representative of the corporation or partnership.

Thus, the Sixth Circuit relies on the rather formalistic distinction between the actions of an individual in her capacity as a functionary of the business which she runs and her personal capacity. Dodds argues that the distinction is a meaningless one because an individual can be acting in both capacities simultaneously, yet still subject himself to a self-incriminating disclosure.

The Second Circuit has applied the act of production doctrine where the former president of a corporation was subpoenaed for certain corporate records which he took when he left the company. *In re Grand Jury Subpoenas Duces Tecum*, 722 F.2d 981 (2d Cir.1983) ("*Grand Jury I*"). The president was the target of a grand jury investigation for alleged fraud in financial statements of the corporation which was undergoing a Chapter 11 bankruptcy proceeding. The Second Circuit reversed a finding of contempt for the president's refusal to produce the documents, holding that the act of production was protected by the Fifth Amendment privilege, but that there was not an adequate record on which to base a determination that the actual production would have an incriminating effect. *Id.* at 987. The magistrate and Dodds both consider *Grand Jury I* to be an expansive privilege case protecting any corporate officer from the compulsory act of producing the corporation's records. To the contrary, the Second Circuit is in the same camp as the Sixth Circuit. The court in *Grand Jury I* considered it an important factor that the president had left his corporate position and possessed the documents only as a private citizen. *Id.* at 986–87. It was even conceded by the court that "[i]t is true that if the witness were still a Saxon [the corporation whose records were sought] officer or employee he would normally be obligated as a representative of the company to produce its documents, regardless of whether they contained information incriminating him [citing *Bellis* ]." *Id.* at 986. Thus, the court recognized that a *former* official of a collective entity could assert an act of production privilege where

the circumstances of his or her possession affected the testimonial significance of compulsory production.

Furthermore, the limitations of *Grand Jury I* were clarified in a later case in the same circuit, *In re Two Grand Jury Subpoenae Duces Tecum*, 769 F.2d 52 (2d Cir. 1985) ("*Grand Jury II*"), where the custodian of corporate records filed a motion to quash a subpoena to produce those records. The custodian was the majority shareholder of the corporation, its sole operating officer and director, and he was also the target of a grand jury investigation. Two subpoenas were issued, one to the corporation and one to the corporation's "Custodian of Records." The district court declined to quash the subpoenas, but directed that the records be produced by an individual not the target of the grand jury investigation. In denying the custodian's appeal, the Second Circuit rejected the proposition that *Doe* had expanded the privilege of a custodian holding corporate records. The court read *Doe* as applying the act of production doctrine only to the records of sole proprietorships. *Id.* at 58. Furthermore, the court noted that *Doe* "fails to discuss the long-standing rules set down by the Supreme Court that have limited, emphatically, the fifth amendment privilege in the corporate setting." *Id.*

The court in *Grand Jury II* applied a restrictive reading to *Grand Jury I*, referring to the primary distinguishing factor that the individual subpoenaed in the latter case was not subpoenaed in his capacity as a corporate representative, but in his individual capacity. Furthermore, the court pointed out that the subpoena in *Grand Jury I* did not permit another individual to produce the records. However, in *Grand Jury II*, the custodian was being compelled to produce the records purely as part of his employment duties and the court noted that the fact that the custodian's act of production might be incriminating did not relieve the corporation of its duty to provide its records. In that respect, the court observed that in order to avoid any constitutional barriers to discovery the corporation could easily appoint an individual who would not incriminate himself by producing the documents.

The *Grand Jury II* court also discussed the *Bellis* opinion and the long-standing rule that business entities have no Fifth Amendment privilege. According to the Second Circuit, the only way an act of production privilege could be extended to the representative of a corporation or other business entity would be if *Doe* had overruled *Bellis*, a conclusion with which we do not concur since it is our view that *Bellis* did not even address the act of production doctrine.

The only appellate court to come down squarely on the side of Dodds in this case is the Third Circuit, which ruled in *In re Grand Jury Matter (Brown)*, 768 F.2d 525 (3d Cir.1985) (*en banc*), that the custodian of corporate records may assert his or her individual privilege against self-incrimination in refusing to produce the records in response to a grand jury subpoena. The complaining witness in *Brown* was the sole owner of a professional corporation who was subpoenaed by the government either to give authentication testimony before the grand jury or supply non-verbal authentication of the corporate records.

The Third Circuit reversed the district court's finding that Brown was in contempt, holding that he could assert a privilege from the act of production based on *Doe* and *Fisher*. The court rejected the notion that its holding in any way undercut the Supreme Court's *Bellis* decision which it read as abrogating the constitutional privilege for business officers only with respect to the content of collective entity documents. *Id.* at 528 n. 2. The court also indicated alternative methods of authentication available to the government which would not require the compulsion of incriminatory disclosures by Brown, such as finding another agent of the corporation to produce the records or granting Brown use

immunity under 18 U.S.C. §§ 6002, 6003 (1982). *Id.* at 529.[4]

The question before us today is not easily resolved given the piecemeal manner in which the doctrine of constitutional privilege regarding the "act of production" has been addressed. At least part of the difficulty grows from the well-established "collective entity rule." There is an underlying tension between the competing doctrines of the collective-entity rule and the Fifth Amendment privilege against self-incrimination which must be resolved in this context. Another problem stems from the fact that the doctrinal basis for the Fifth Amendment privilege has changed markedly in recent years. The jurisprudential focus has shifted from its early grounding in the protection of personal privacy and property to the more precise issue of whether an act is both testimonial in nature and potentially incriminating.

From the rather disparate line of cases discussed above, we conclude the following: (1) *Bellis* does not absolutely control the outcome in the present case because the *Bellis* Court was unconcerned with the "act of production" analysis in its decision which focuses on the content of the business documents and not the testimonial implications arising from their physical production; (2) *Fisher* and *Doe* do not stand for the proposition that any individual who holds the business records of a collective entity may assert the Fifth Amendment privilege against the act of production; (3) despite the Supreme Court's departure from the earlier property and privacy rationales for defining the scope of the privilege against self-incrimination, the last vestiges of those principles still exist in the Court's more recent analyses, especially regarding the conduct of individuals in their official capacity as business officials. Furthermore, it is our view that if the Supreme Court were faced with the question before this Court today, it would extend the *Bellis*

rule to deny Dodds' assertion of privilege against the act of producing the partnership records.

Although *Bellis* does not control this case, some of the *Bellis* Court's reasons for not extending the privilege to individuals with respect to the content of collective entity documents also support denying the act of production privilege to such individuals. *Bellis* merely removed the Fifth Amendment cloak from individuals who act in their capacity as representatives of collective business entities. There is no question that the content of a collective entity's documents may have testimonial incriminatory communications with respect to the individuals who prepared or possessed those documents. Nevertheless, the *Bellis* Court concluded that to allow assertion of the personal privilege in this context would be to eliminate, for all practical purposes, the rule that no collective business entity is entitled to a privilege against self-incrimination. *Bellis*, 417 U.S. at 90, 94 S.Ct. at 2184. The Court wrote that "[i]n view of the fact that an artificial entity can only act to produce its records through its individual officers or agents, recognition of the individual's claim of privilege with respect to the financial records of the organization would substantially undermine the unchallenged rule that the organization itself is not entitled to claim any Fifth Amendment privilege, and largely frustrate legitimate governmental regulation of such organizations." *Id.* In the same manner, extension of the act of production doctrine to individual officers or agents who are asked to produce business documents could effectively result in a collective entity privilege.

The limits of the act of production doctrine lie in the somewhat formal distinction between the significance of acts undertaken in an official business capacity and those done in a purely personal capacity. Dodds argues that this distinction is mean-

---

**4.** Dodds also cites *United States v. Black*, 767 F.2d 1334 (9th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 574, 88 L.Ed.2d 557 (1985), as adopting the "act of production" doctrine for holders of business documents. In *Black*, however, the government conceded that the defendant "may

enjoy such a privilege" but argued that he had waived any privilege he might have had. *Id.* at 1341. The court agreed that any privilege which might exist was waived and never had to explicitly address the act of production issue. *Id.*

ingless because an individual who serves in some official business capacity cannot distinguish his or her behavior in terms of its official and personal implications. Nonetheless, that is the standard by which courts which have dealt with this question have lived.

■ This analysis draws support from the Supreme Court's opinion in *Fisher*, which focused on the circumstances of an individual's possession as part of the privilege analysis. *Fisher*, 425 U.S. at 410–11, 96 S.Ct. at 1581. Thus, there are some circumstances which would vest compelled disclosure with the "testimonial significance" associated with a constitutional claim of privilege. Although the formal distinction between acting as an individual and as an official seems artificial, the key is that when a person acts in his or her official business capacity the act of producing documents simply has no personal testimonial significance. Accordingly, no privilege attaches to the compulsion of such an act. Thus, we disagree with the magistrate's opinion that an individual's status as a present or former official would not make a difference in the existence of a personal privilege. *See Grand Jury I*, 722 F.2d at 986.

Although the partnerships in question in this case have undergone dissolution, it appears that they are still in the process of winding up their affairs, as indicated by the very existence of this foreclosure action. *See* Ill.Rev.Stat. ch. 106½ §§ 29–43 (1985) (providing for the winding up of a partnership's affairs).[5] Dodds has not claimed that his possession of the partnership documents is in anything but a lawful, official capacity.

Moreover, in every case which has recognized the act of production privilege, there has been some element making the compelled disclosure more closely related to a personal act of self-incrimination than an

official production of documents. In *Doe*, for example, the Court explicitly addressed the personal nature of the sole proprietor's business records before extending the act of production doctrine to his situation. *Fisher* involved individuals, not collective entities. In *Grand Jury I* the subpoenaed individual was a *former* officer of the corporation whose very possession of the corporation's documents had incriminatory testimonial ramifications since he apparently had absconded with them wrongfully. Thus, disclosure would have been incriminatory in a personal sense, rather than a mere communication on behalf of the corporation. Even the Third Circuit's *Brown* opinion, which represents the furthest extension of the scope of the act of production doctrine, involved an individual who was the sole owner of a professional corporation. Although that corporation has a distinct institutional identity, the nature of its records is more akin to the protected documents of the sole proprietor in *Doe*. That personal element of compelled disclosure is lacking here.

Furthermore, the testimonial implications of a business representative's production of collective entity documents are minimal. As the Supreme Court stated in *Fisher* in the context of the personal act of production privilege, "[i]t is doubtful that implicitly admitting the existence and possession of the papers rises to the level of testimony within the protection of the Fifth Amendment ... [t]he existence and location of the papers are a foregone conclusion and the ... [individual] adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers." *Fisher*, 425 U.S. at 411, 96 S.Ct. at 1581. Moreover, in the present case, Dodds has already implicitly admitted to the "custody, possession or control" of the documents in question. *See* Motion and Supporting Memorandum of Defendant Douglas W. Dodds for Clarification of May

---

5. In particular, *see* § 30 ("On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed") and § 33 (*"Except so far as may be necessary to wind up partnership affairs* or to complete transactions begun but not then finished, dissolution terminates all authority of any partner to act for the partnership") (emphasis added).

30, 1986 Order and for Protective Order at ¶ 5. Although Dodds argues that his use of the disjunctive "or" means that he has not conceded "possession *and* control," we view this as a distinction without a difference. Furthermore, in this case Dodds' production of the documents would merely be authenticating that they were records of the partnership, something which could probably be done through extrinsic evidence in any event. Finally, any inference that Dodds has knowledge of any incriminating (and not privileged) contents of the documents would be implicit from his control of the partnerships notwithstanding his act of producing those documents.

In conclusion, we find the compelled act of production in this case to be free from any constitutional infirmity. While Dodds' production bears some of the characteristics of self-incriminatory disclosures protected under the act of production doctrine for individual citizens, it has only minimal testimonial significance herein since he holds the documents merely in his official capacity as a general partner. Accordingly, the Court adopts the Report and Recommendation of Magistrate Rosemond [6] and overrules Dodds' objections thereto. It is so ordered.[7]

---

**6.** In his original motion before the magistrate, Dodds also raised an attorney-client privilege issue which was not addressed in the magistrate's report. Dodds has not repeated this assertion here, and we do not address any claim he might have.

**7.** The briefing schedule on the plaintiffs' motion for summary judgment had been stayed pending this Court's review of Magistrate Rosemond's Report and Recommendation. The parties should now complete the briefing of that motion. The intervenors are ordered to file their response on or before November 1, 1986. The plaintiffs are ordered to file their reply by November 10, 1986.