**In re Neil KENNY, A Witness Before the January 1982 Grand Jury.**

No. 1375, Docket 83-6091.

United States Court of Appeals, Second Circuit.

Argued May 19, 1983.

Decided Aug. 10, 1983.

Francine Seiden, New York City (Morton Levine, New York City, of counsel), for appellant Neil Kenny.

William B. Pollard, Asst. U.S. Atty., S.D. N.Y., New York City (John S. Martin, Jr., U.S. Atty., S.D.N.Y., Roanne L. Mann, Asst. U.S. Atty., S.D.N.Y., New York City, of counsel), for appellee United States of America.

Before MANSFIELD, MESKILL and KEARSE, Circuit Judges.

PER CURIAM:

Neil Kenny appeals from an order of civil contempt entered against him in the United States District Court for the Southern District of New York, Lasker, *J.,* after he refused to produce and authenticate certain medical records demanded by a grand jury subpoena *duces tecum* dated December 21, 1982. Relying on an earlier decision by Judge Gagliardi in the same case, Judge Lasker held that the challenged medical records fell within the "required records" exception to the Fifth Amendment privilege against self-incrimination and cited Kenny for civil contempt when he persisted in his refusal to produce the subpoenaed records. We affirm.

## BACKGROUND

In 1980 the Aetna Life and Casualty Insurance Company informed federal officials that an unusually high number of medical expense claims had been filed by David and Susan Reichman seeking reimbursement for medical payments made to Dr. Neil Kenny, a chiropractor licensed to practice in the State of New Jersey. According to Aetna, the Reichmans claimed to have received approximately 140 chiropractic treatments from Dr. Kenny during the two year period, 1979–80.

A federal grand jury, convened in the Southern District of New York, is presently considering whether these claims were made pursuant to a scheme to defraud, 18 U.S.C. § 1341 (1976), and whether Dr. Kenny participated in that scheme, 18 U.S.C. § 371 (1976). On December 21, 1982 the grand jury issued a subpoena *duces tecum* to Kenny seeking: "For the period January 1, 1975 to date all *original* documents that relate or refer to David I. Reichman, Susan Grossman Reichman, Justine Reichman and/or Wilmot Sulzer." Kenny moved to quash, asserting his Fifth Amendment privilege against self-incrimination. The government responded that the subpoenaed documents fell within the "required records" exception to the Fifth Amendment privilege against self-incrimination and therefore were subject to compulsory disclosure.

Judge Gagliardi separated the subpoenaed documents into three groups—business records, medical records and x-rays. He granted Kenny's motion to quash insofar as the subpoena demanded production of the business records. *See Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). But he denied Kenny's motion in all other respects, holding that the medical records and x-rays sought by the grand jury fell within the required records exception. Judge Gagliardi observed that since the documents were required to be maintained pursuant to a valid New Jersey regulatory scheme, compelled production through subpoena *duces tecum* did not offend Kenny's Fifth Amendment privi-

lege. He ordered Kenny to produce the medical records and x-rays or suffer the penalty of contempt.

Despite Judge Gagliardi's unequivocal order, Kenny persisted in his refusal to produce the subpoenaed records. At a contempt hearing before Judge Lasker on March 31, 1983 Kenny reaffirmed his belief that compelled production of the disputed records would violate his Fifth Amendment privilege against self-incrimination. Judge Lasker rejected this defense and issued a contempt citation ordering Kenny incarcerated until he produces the subpoenaed medical records and x-rays or until the end of the grand jury term, but in no event longer than eighteen months. 28 U.S.C. § 1826(a) (1976). This appeal followed.

## DISCUSSION

The sole question presented for our review is whether compulsory production of patient medical records and x-rays required to be maintained under New Jersey law would violate Dr. Kenny's Fifth Amendment privilege against self-incrimination. To answer that question, we must turn to the pertinent state laws.

■ The State of New Jersey, recognizing the vital public interest in competent medical care, has enacted a comprehensive statutory scheme to regulate medical professionals licensed to practice within the state. *See* N.J.Stat.Ann. 45:9–1 *et seq.* (West 1978 & Supp.1982). Under this scheme, the New Jersey State Board of Medical Examiners (Board) is charged with principal responsibility for licensing medical professionals and investigating allegations of physician misconduct. The Board's authority is broad; it may require physicians to maintain patient medical records, N.J. Admin.Code tit. 13, § 35–6.12(b) (Supp. 1981), and, when investigating charges of misconduct, it may order the physician to disclose those records, N.J.Stat.Ann. 45:1–18(e) (West Supp.1982). Citing the "public aspects" of this statutory scheme, both Judges Lasker and Gagliardi held that the subpoenaed medical records and x-rays fell within the required records exception to the

Fifth Amendment privilege and therefore are subject to compulsory production. We agree.

■ The required records exception provides that documents maintained pursuant to a valid regulatory scheme possess certain "public aspects" sufficiently analogous to "public documents" to warrant limited disclosure notwithstanding Fifth Amendment concerns. *See generally Shapiro v. United States*, 335 U.S. 1, 32–34, 68 S.Ct. 1375, 1391–93, 92 L.Ed. 1787 (1948); *Donovan v. Mehlenbacher*, 652 F.2d 228, 231 (2d Cir. 1981). To satisfy this exception, the subpoenaed documents (1) must be maintained pursuant to an administrative scheme that is "essentially regulatory;" (2) must be of a kind "which the regulated party has customarily kept;" and (3) "must have assumed 'public aspects' which render them at least analogous to public documents." *Grosso v. United States,* 390 U.S. 62, 67–68, 88 S.Ct. 709, 713, 19 L.Ed.2d 906 (1968); *see Shapiro v. United States,* 335 U.S. at 34–35, 68 S.Ct. at 1393.

The subpoenaed medical records and x-rays fall safely within the required records exception. The purpose of the New Jersey statutory scheme governing the medical profession is "essentially regulatory"—it advances the important public purpose of ensuring that medical care is administered in the state by competent professionals. *Cf. Grosso v. United States,* 390 U.S. at 68, 88 S.Ct. at 713 (statutory scheme directed exclusively to individuals inherently suspect of criminal activities); *Marchetti v. United States,* 390 U.S. 39, 57, 88 S.Ct. 697, 707, 19 L.Ed.2d 889 (1968) (same). And, Kenny concedes that the subpoenaed records are maintained as a regular part of his medical practice. Finally, the subpoenaed documents possess "public aspects" by virtue of New Jersey's comprehensive regulatory scheme. The New Jersey State Board of Medical Examiners requires that patient records be maintained for seven years, N.J. Admin.Code tit. 13, § 35–6.12(b) (Supp. 1981), and that practitioners, upon proper notice, must disclose such records to facilitate the Board's investigation of alleged

physician misconduct, N.J.Stat.Ann. 45:1–18(e) (Supp.1982). Implicit in this scheme is a legislative judgment that limited disclosure of patient records is necessary to further the public interest through rigorous ongoing review of medical professionals. We have consistently found "public aspects" sufficient for purposes of the required records exception in similar statutory schemes. *See In re Dr. John Doe, M.D., A Witness Before the January 1982 Additional Grand Jury,* 711 F.2d 1187 (2d Cir.1983) (patient records required to be maintained under New York state law); *United States v. Warren,* 453 F.2d 738, 742 (2d Cir.), *cert. denied,* 406 U.S. 944, 92 S.Ct. 2040, 32 L.Ed.2d 331 (1972) (federal law requiring physicians to maintain records on acquisition and distribution of amphetamines has "public aspects;" compelled production of those records did not violate defendant's Fifth Amendment rights); *United States v. Silverman,* 449 F.2d 1341, 1345 (2d Cir. 1971), *cert. denied,* 405 U.S. 918, 92 S.Ct. 943, 30 L.Ed.2d 788 (1972) (attorney's contingent fee arrangements, although privileged between attorney and client, have sufficient "public aspects" given New York state law requiring that fee arrangements be filed with the court); *see also Donovan v. Mehlenbacher,* 652 F.2d 228, 231 (2d Cir.1981) ("Under that doctrine [required records], records required to be kept pursuant to valid regulatory programs have a 'public aspect' for purposes of constitutional analysis . . . .").

■ Kenny argues that the district judge erred by relying on state law to determine whether the subpoenaed documents were required records. According to Kenny, in federal proceedings the court should look only to federal law to determine whether a document falls within the required records exception; state law, he argues, is relevant *only* in state proceedings. This Circuit has rejected the view advanced by Kenny, and for good reason. *See In re Dr. John Doe, M.D., A Witness Before the January 1982 Additional Grand Jury,* 711 F.2d 1187, 1191–92 (2d Cir.1983); *see also Shapiro v. United States,* 335 U.S. at 17–18 & n. 25, 68

S.Ct. at 1384–85 & n. 25; *United States v. Silverman,* 449 F.2d at 1345 (attorney fee arrangements required to be submitted to the court under New York state law qualify as "required records"). There is no justification either in law or logic to limit the application of the required records doctrine to those documents maintained under federal law. If records are required to be maintained "pursuant to valid regulatory programs," *Donovan v. Mehlenbacher,* 652 F.2d at 231, whether under state law or under federal law, those records will be subject to compelled production through grand jury subpoena *duces tecum. In re Dr. John Doe, M.D., A Witness Before the January 1982 Additional Grand Jury,* 711 F.2d 1187, 1191 (2d Cir.1983); *see United States v. Silverman,* 449 F.2d at 1345; *United States v. Kaufman,* 429 F.2d 240, 247 (2d Cir.), *cert. denied,* 400 U.S. 925, 91 S.Ct. 185, 27 L.Ed.2d 184 (1970).

Kenny next argues that the legislative scheme has no public aspects because the recordkeeping requirement is imposed principally for the benefit of the patient. We disagree. Review of the statute reveals a dual legislative purpose—to afford the patient reasonable access to his medical records *and* to assist the Board in carrying out its important licensing and investigatory functions. Although dual policies are advanced by these regulations, the subpoenaed medical records and x-rays clearly have "public aspects." *See In re Dr. John Doe, M.D., A Witness Before the January 1982 Additional Grand Jury,* 711 F.2d 1187, 1192 (2d Cir.1983); *United States v. Warren,* 453 F.2d at 742.

The order of the district court holding Kenny in civil contempt is affirmed.