## In re GRAND JURY SUBPOENAS DATED JUNE 27, 1991.

### Misc. No. 972.

United States District Court,
N.D. Texas,
Dallas Division.

Aug. 1, 1991.

Richard M. Fishkin, Director, Dallas Regional Office by Terri L. Galligher and Michael Love, Trial Attys., U.S. Dept. of Justice, Dallas, Tex., for the Government.

Paul Coggins, William A. Roberts, Meadows Owens Collier Reed & Coggins, Dallas, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

SANDERS, Chief Judge.

### I. *Background.*

On the morning of June 27, 1991 an agent of the Federal Bureau of Investigation served twelve "forthwith" subpoenas on six individuals, who herein are collectively referred to as "Respondents." Two subpoenas were served on each of the six Respondents; each pair of subpoenas was identical. All six Respondents are related and all six enjoyed business relationships with a certain Savings and Loan Association as officers, employees, and consultants. Because of the close business and family relationships between Respondents and because Respondents raise the same legal issues, the Court treats them as a group for the purposes of this Memorandum Opinion and Order.

The first subpoena served on Respondents commanded that they bring to the Grand Jury all documents belonging to the Savings and Loan Association as well as several of its subsidiary corporations. The second subpoena required Respondents to produce all home furnishings and apparel purchased with funds of the Savings and Loan, including furniture, rugs, rocking horses, pianos, paintings, lamps, wall hangings, decorations, televisions, telephones, stereo equipment, computer equipment and clothing. The second subpoena is not at issue here.

One of the Respondents appeared before the Grand Jury and asserted his Fifth

Amendment privilege. The Government then filed a motion to compel compliance with the Grand Jury subpoenas on June 28, 1991. The Court granted the motion without holding a hearing. Respondents then moved for reconsideration of the Court's order compelling compliance with the subpoenas, and after a hearing the Court granted Respondents' motions. The Court found that the act of producing the subpoenaed documents could incriminate respondents in that such production would amount to a formal testimonial admission that they possessed the documents. In addition to being evidence that Respondents misappropriated the documents, the Government could also use an admission of possession to argue that the removal of the documents from the Savings and Loan was a tacit admission of knowledge of their incriminating contents and that Respondents absconded with them because the documents were evidence of guilt.

The Government now moves for reconsideration of the Court's July 10 Order. For the reasons stated below, the Government's motion to reconsider is GRANTED.

## II. *Discussion.*

The issue before the Court is whether the "required records" exception to the Fifth Amendment privilege against self-incrimination applies to business records allegedly held by a former employee who asserts his Fifth Amendment privilege solely as to the act of producing the documents, and not as to the contents of the subpoenaed documents.

### A. The Fifth Amendment Privilege and the Act-of-Production Doctrine.

The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." This privilege has been construed to protect an individual from being compelled to produce personal records that might incriminate him. *See Boyd v. United States*, 116 U.S. 616, 634–35, 6 S.Ct. 524, 534, 29 L.Ed. 746 (1886) (finding that "a compulsory production of the private books and papers" of a person constitutes compelling him "to be a witness against himself, with-

in the meaning of the Fifth Amendment to the Constitution" and also is an unreasonable search and seizure within the meaning of the Fourth Amendment); *see also Bellis v. United States*, 417 U.S. 85, 87, 94 S.Ct. 2179, 2182, 40 L.Ed.2d 678 (1974) ("It has long been established ... that the Fifth Amendment privilege against compulsory self-incrimination protects an individual from compelled production of his personal papers and effects as well as compelled oral testimony."); *Couch v. United States*, 409 U.S. 322, 328–31, 93 S.Ct. 611, 615–17, 34 L.Ed.2d 548 (1973) (stating that the privilege against self-incrimination adheres basically to the person and not to the potentially incriminating information, and that the privilege applies to the possessor and not the owner of the information); *Schmerber v. California*, 384 U.S. 757, 763–64, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908 (1966) ("It is clear that the protection of the privilege reaches an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers."); *Davis v. United States*, 328 U.S. 582, 587–91, 66 S.Ct. 1256, 1258–61, 90 L.Ed. 1453 (1946) (distinguishing private papers from public property in the custody of a citizen in applying the Fifth Amendment privilege); *United States v. White*, 322 U.S. 694, 699, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944) (stating that the constitutional privilege against self-incrimination "protects the individual from any disclosure, in the form of oral testimony, documents or chattels, sought by the legal process against him as a witness"); *Wheeler v. United States*, 226 U.S. 478, 489, 33 S.Ct. 158, 162, 57 L.Ed. 309 (1913) (holding that there is no self-incrimination where one is compelled to produce the papers of a business that has no privilege); *Wilson v. United States*, 221 U.S. 361, 377, 31 S.Ct. 538, 543, 55 L.Ed. 771 (1911) (finding that the privilege against self-incrimination "undoubtedly" protects one "against the compulsory production of his private books and papers").

■ Although this privilege protects individuals, it has no application to corpora-

tions, *see Hale v. Henkel*, 201 U.S. 43, 74, 26 S.Ct. 370, 378–79, 50 L.Ed. 652 (1906), and an individual cannot assert his personal privilege in order to defeat a subpoena for corporate records, even if the records contain information incriminating him, *see Bellis v. United States*, 417 U.S. at 88–89, 94 S.Ct. at 2183–84; *United States v. White*, 322 U.S. at 699, 64 S.Ct. at 1251, and even if the documents were drafted by him in his capacity as a corporate officer. *See Fisher v. United States*, 425 U.S. 391, 410 n. 11, 96 S.Ct. 1569, 1580 n. 11, 48 L.Ed.2d 39 (1976) (stating that "[t]he fact that the documents may have been written by the person asserting the privilege is insufficient to trigger the privilege"); *Wilson v. United States*, 221 U.S. at 378, 31 S.Ct. at 543 (holding that "where an officer of a corporation has possession of corporate records which disclose his crime, there is no ground upon which it can be said that he will be forced to produce them if the entries were made by another, but may withhold them if the entries were made by himself"). "In producing records as an officer of the company he would not be attesting to his personal possession of them but to their existence and possession by the corporation, which is not entitled to claim a Fifth Amendment privilege with respect to them." *In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983 and June 22, 1983*, 722 F.2d 981, 986 (2d Cir. 1983) [hereinafter *Saxon Industries*].

██ It is also established law that the act of producing documents is itself a communication, separate and distinct from the information in the documents produced, that is protected by the Fifth Amendment. "The act of producing evidence in response to a subpoena ... has communicative aspects of its own, wholly aside from the contents of the papers produced." *Fisher v. United States*, 425 U.S. at 410, 96 S.Ct.

at 1581; *see Curcio v. United States*, 354 U.S. 118, 125, 77 S.Ct. 1145, 1150, 1 L.Ed.2d 1225 (1957) ("The custodian's act of producing books or records in response to a subpoena *duces tecum* is itself a representation that the documents produced are those demanded by the subpoena."). The Supreme Court has clearly stated that the act of producing documents can constitute testimonial communication protected by the Fifth Amendment because it may entail implicit statements of fact: "by producing documents in compliance with a subpoena, the witness would admit that the papers existed, were in his possession or control, and were authentic." *Doe v. United States*, 487 U.S. 201, 209, 108 S.Ct. 2341, 2347, 101 L.Ed.2d 184 (1988). "Production is the precise act compelled by the subpoena, and obedience, in some cases, will require the custodian's own testimonial assertions.... [T]he potential for self-incrimination inheres in the act demanded of the individual...." *Braswell v. United States*, 487 U.S. 99, 124, 108 S.Ct. 2284, 2298, 101 L.Ed.2d 98 (1988) (Kennedy, J., dissenting).

In the present case Respondents argue that they have properly asserted their Fifth Amendment privilege as to the act of producing corporate documents allegedly in their possession. Respondents rely principally on *Saxon Industries*. In that case, the former president of Saxon Industries retained some of that company's records after leaving its employment. When the former president was served with a subpoena *duces tecum* commanding him to produce all records of Saxon Industries in his possession, he resisted on the ground that the act of producing the documents would tend to incriminate him. *See Saxon Industries*, 722 F.2d at 982–83. The former Saxon president made two arguments, both of which are invoked by Respondents in the present case.[1]

---

1. One Respondent argues as follows:

The United States served subpoenas on [Respondent], the *former* president of [the] Savings & Loan Association. He is not the custodian of corporate records, nor is he even an employee. This is the distinction the Supreme Court found decisive in *Braswell* [*v.*

*United States*, 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988)].
Simply put, no Court has ever ruled that the Government may compel an "act of production" by subpoena in the face of the individual's *Fifth Amendment* exercise *except when he is the corporation's agent in a representative capacity, i.e.,* the custodian[.]

■ The former Saxon Industries president first argued that because he had disassociated himself from the company well before the Grand Jury issued the subpoena, the former corporate records in his possession had "somehow become his personal papers and are therefore entitled under the Fifth Amendment to protection from compulsory disclosure." *Id.* at 986. Absent evidence that ownership or possession of the papers at issue was lawfully transferred to the individual, the *Saxon Industries* court found that this contention "border[ed] on the frivolous" because "the witness has no right to appropriate to himself corporate documents, whether originals or copies." *Id.* Of course, the Supreme Court has long held that no Fifth Amendment privilege applies to corporate records, even after the corporation is dissolved, because "an officer has no personal right to retain the corporate books against any demand of government which the corporation was bound to recognize." *Wilson v. United States*, 221 U.S. at 385, 31 S.Ct. at 546; *see Fisher v. United States*, 425 U.S. at 410 n. 11, 96 S.Ct. at 1580; *Bellis v. United States*, 417 U.S. at 88–89, 94 S.Ct. at 2182–83; *United States v. White*, 322 U.S. at 699, 64 S.Ct. at 1251. As Justice Frankfurter stated, "[t]he *Wilson* case was correctly decided. The Court's holding boiled down to the proposition that 'what's not yours is not yours.'" *Shapiro v. United States*, 335 U.S. 1, 58, 68 S.Ct. 1375, 1404, 92 L.Ed. 1787 (1948) (Frankfurter, J., dissenting). In the present case, Respondents' argument that any documents from the Savings and Loan that may be in their possession are held as private documents is without merit.

The second argument presented by the witness in Saxon, and Respondents here, was that he was protected by the act of production doctrine.

> Invoking *Fisher* [*v. United States*, 425 U.S. 391, 410, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39 (1976)], he argues that even if the contents of the corporate documents must be disclosed, he is entitled under the Fifth Amendment to refuse to produce them because his act of producing them would amount to an attestation that he has possession of them. ... His post-employment possession, he contends, is therefore an issue in the case; to require him to engage in the act of producing the documents pursuant to subpoena would amount to testimonial compulsion in violation of his Fifth Amendment rights.

*Saxon Industries*, 722 F.2d at 986.

The court in *Saxon Industries* found merit in this argument, stating that once an officer leaves a company he no longer acts as a corporate representative but rather functions in an individual capacity in his possession of corporate records.

> Although his possession of them as a private citizen may have been derived from his wrongful misappropriation of them from the corporation, we do not view such conduct as depriving him, once the documents are in his personal possession (rather than as a corporate representative), of his right under the Fifth Amendment to invoke the act of production doctrine outlined in *Fisher*. It is elementary that a person need not be guiltless to qualify for invocation of the Fifth Amendment.

*Id.* at 987. Accordingly, the *Saxon Industries* court remanded the case to the district court to determine which documents

....
Here, any documents [Respondent] allegedly holds are not held as an agent in a representative capacity because he has not been employed by the corporation in over two years. His association with the corporation has long been over. Thus, *any such documents held by him are held either as personal documents or, for argumentative purposes, documents that should not have been withdrawn from the corporation and the turning over of which may expose him to criminal* liability. Indeed, counsel for the government informed counsel for [Respondent] that the government believes that [Respondent] possesses documents which do not belong to him. Respondent's Memorandum in Support of Motion for Reconsideration, filed July 5, 1991, at 5–6 (last emphasis added). The other Respondents present essentially the same argument. *See* Respondents' Motion for Reconsideration of Ex Parte Order to Enforce Grand Jury Subpoena, filed July 3, 1991, at 2.

covered by the subpoena were subject to *Fisher*'s act of production privilege.

In the present case, Respondents argue that all of the documents listed in the subpoenas are subject to the act of production doctrine because they fear prosecution for wrongful appropriation or destruction of the documents. Therefore, they believe that *Saxon Industries* governs this case and the assertion of their Fifth Amendment rights must be upheld.

### B. The "Required Records" Exception to the Fifth Amendment.

The Government contends, however, that neither *Fisher* nor *Saxon Industries* applies to the present case because the documents it seeks from Respondents fall within the "required records" exception to the Fifth Amendment privilege against self-incrimination. Constitutional protection does not extend to " 'records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation, and the enforcement of restrictions validly established.' " *Shapiro v. United States*, 335 U.S. at 33, 68 S.Ct. at 1392, *quoting Davis v. United States*, 328 U.S. 582, 590, 66 S.Ct. 1256, 1260, 90 L.Ed. 1453 (1946).

■ In order to meet the required records exception to the Fifth Amendment privilege against self-incrimination, three requirements must be met.

First, the purposes of the Government's inquiry must be essentially regulatory, rather than criminal. Second, the records must contain the type of information that the regulated party would ordinarily keep. Third, the records "must have assumed 'public aspects' which render them at least analogous to public documents."

*In re Grand Jury Subpoena Duces Tecum Served Upon Underhill*, 781 F.2d 64, 67 (6th Cir.) [hereinafter *Underhill*] (quoting *Grosso v. United States*, 390 U.S. 62, 67–68, 88 S.Ct. 709, 713–14, 19 L.Ed.2d 906 (1968)), *cert. denied*, 479 U.S. 813, 107 S.Ct. 64, 93 L.Ed.2d 23 (1986).[2] Once these three criteria are met, and for the moment the Court assumes that they have been met, a witness may not resist compliance with a Grand Jury subpoena on the basis of the Fifth Amendment privilege against self-incrimination because of the "fundamental fact that the required records doctrine is an *exception* to the Fifth Amendment. As such, the doctrine presupposes that compliance with the government's inquiry may be incriminating." *Id.* at 70 (citations omitted). Accordingly, "where the narrow parameters of the doctrine are met, and the balance weighs in favor of disclosure, the information must be forthcoming *even in the face of potential incrimination.*" *Id.*

■ Respondents argue that the required records exception does not apply because their opposition to the subpoenas is grounded not on disclosure of the contents of the documents they allegedly possess, but rather on the potentially incriminating effect of the act of producing the documents. The Court disagrees. As the *Underhill* court recognized, the required records exception is just that: an exception to the Fifth Amendment privilege. Indeed, in *Saxon Industries*, upon which Respondents rely, the court made clear that had the records at issue—records possessed by a former president of Saxon Industries who invoked the act-of-production doctrine—been required records kept pursuant to a regulatory scheme, they would not have been protected from disclosure by the act-of-production doctrine. "The governmental requirement that they be kept implies an obligation to produce them upon the

**2.** With regard to the first requirement, it does not matter that the Grand Jury inquiry is criminal in nature because "the relevant inquiry is whether the statute and regulations which require their maintenance are regulatory in nature." *Underhill*, 781 F.2d at 67. Put another way, "if the record-keeping requirement is directed at a group inherently suspect of criminal activity, and a noncriminal and regulatory area of inquiry is patently not involved, the disclosure then has such a pervasive incriminatory effect that the fifth amendment may be invoked." *In re Grand Jury Proceedings*, 601 F.2d 162, 168 (5th Cir.1979) (citing *Albertson v. Subversive Activities Control Board*, 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965)). There is no question that this requirement is met as to the subpoenas requiring production of documents.

government's demand, *which amounts to a waiver of any Fifth Amendment claim with respect to the act of production."* Saxon Industries, 722 F.2d at 987 (emphasis added).

This concept of waiver of the Fifth Amendment privilege was explained by Judge Sand in a 1986 case in which a former bank employee, Theresa Shieh, resisted a Grand Jury subpoena on the grounds asserted by Respondents here. The court rejected Shieh's argument.

> When we talk about waiver of a privilege with respect to "required records," we are not dealing with the state of mind of the person under the subpoena. We are dealing with the legal consequences which, as a matter of public interest and for the purposes of the privilege against self-incrimination, will attach to the possession of "required records." Thus, if one were to say that while Miss Shieh served as a bank officer, she waived any Fifth Amendment privilege with respect to records which were required by law to be kept by the bank, one would further say that when as a former bank officer she chose to take custody of those records, she further waived her right to resist their production because of the nature of the documents she took into her possession. Indeed, as a matter of policy there is much to be said for that conclusion. A contrary conclusion creates an inordinate incentive for an ex-employee of a governmentally regulated body to take into his personal possession documents which the law required that body to keep if the consequences of that would be to immunize those documents, as to which no privilege otherwise attaches, from governmental scrutiny.

*In re Petition of the Federal Deposit Insurance Corporation to Enforce Subpoena Duces Tecum Number 0007,* 640 F.Supp. 1178, 1182 (S.D.N.Y.1986).

The Fifth Circuit has applied the required records exception to the Fifth Amendment to a situation similar to that presently before the Court. In a 1979 case the court considered the case of a former employee of a customs house who had been served with a grand jury subpoena *duces tecum* and who contended that "even if the subpoena were limited to 'required records,' he would be privileged from producing the records because the mere act of producing them would be, in effect, 'testimonial' (*i.e.,* he would implicitly be 'authenticating' them as those records sought by the subpoena)." *In re Grand Jury Proceedings,* 601 F.2d 162, 170 (5th Cir.1979). After analyzing the act of production doctrine as expressed in *Fisher,* the court noted that *Fisher* did not apply to required records and the former customs house employee could properly be compelled to produce required records. "The proper designation by the government of certain records to be kept by an individual necessarily implies an obligation to produce them, and limited implied testimonial authentication. These obligations to keep and produce the records are in a sense consented to as a condition of being able to carry on the regulated activity involved." *Id.* at 171; *see In re Kenny,* 715 F.2d 51, 53 (2d Cir.1983) ("The 'required records' exception provides that documents maintained pursuant to a valid regulatory scheme possess certain 'public aspects' sufficiently analogous to 'public documents' to warrant limited disclosure notwithstanding Fifth Amendment concerns.").

The Second Circuit also has addressed the very issue presently before the Court and concluded that the required record exception may be used to compel a party to perform the act of producing a record when doing so might incriminate him. "Indeed," the Second Circuit found, "the [required records] exception overrides the privilege against self-incrimination ... *even if the compelled act of producing the required records might be testimonial and incriminating." In re Two Grand Jury Subpoenae Duces Tecum Dated August 21, 1985,* 793 F.2d 69, 73 (2d Cir.1986) (emphasis added).

C. The Sought Documents are Required Records Which Have Assumed "Public Aspects."

■ Finally, the Court does not find merit to Respondents' challenges to the

Government's assertion that the subpoenaed documents are records which are required to be maintained by federal regulation, particularly 12 C.F.R. § 563.170(c),[3] and therefore fall within the required records exception to the Fifth Amendment. As already noted, in order to meet the required records exception to the Fifth Amendment privilege against self-incrimination, three requirements must be met.

First, the purposes of the Government's inquiry must be essentially regulatory, rather than criminal. Second, the records must contain the type of information that the regulated party would ordinarily keep. Third, the records "must have assumed 'public aspects' which render them at least analogous to public documents."

*Underhill,* 781 F.2d at 67, *quoting Grosso v. United States,* 390 U.S. 62, 67–68, 88 S.Ct. 709, 713, 19 L.Ed.2d 906 (1968). The Court finds that the first two prongs of the test are met in this case and those requirements merit no discussion. Respondents challenge the third prong of the test, arguing that because the documents at issue are not of a sort generally available to the public they have not assumed "public aspects" which make them analogous to public documents. Of course, if such documents were generally available to the public, the Government would hardly need to serve Respondents with subpoenas. Furthermore, Respondents offer no authority, and the Court is aware of none, for the proposition that a document must be generally available to the public in order for it to have assumed "public aspects" for the purpose of the required records exception.

Respondents rely on *United States v. Lehman,* 887 F.2d 1328 (7th Cir.1989), in

arguing that "[t]he government has not carried its burden of showing that, if any such documents existed, they would be public documents." Respondent's Response to the Government's Motion for Reconsideration, filed July 18, 1991, at 11. *Lehman,* however, simply does not say that documents must be "public documents" to fall within the narrow required records exception to the Fifth Amendment. *Lehman* concerned a Government investigation into possible violations of the Packers and Stockyard Act of 1921. That Act required every livestock dealer to " 'keep such accounts, records, and memoranda as fully and correctly disclose all transactions involved in his business.' " 7 U.S.C. § 221, *quoted in United States v. Lehman,* 887 F.2d at 1330. The Packers and Stockyards Administration served Lehman, a dairy farmer, with a subpoena *duces tecum* demanding production of all of his records pertaining to his buying and selling of livestock. Lehman contended that "enforcement of the subpoena would violate the Fifth Amendment because Lehman risks incriminating himself by producing any such records." *United States v. Lehman,* 887 F.2d at 1332. In rejecting Lehman's argument, the Seventh Circuit first found that despite decisions in *Fisher* and other act-of-production cases, "the Supreme Court has neither explicitly nor implicitly eliminated the required records doctrine." *Id.*

The Seventh Circuit then turned to the three requirements of the required records exception. After finding that the purpose of the compulsion was essentially regulatory and that the records sought contained the type of information the regulated party customarily would keep, the court stated that although "the third prong of the test

---

**3.** The regulation requiring that records be kept reads as follows:

[E]ach savings association, affiliate, or service corporation shall establish and maintain such accounting and other records as will provide an accurate and complete record of all business it transacts, and the documents, films and other material or property comprising said records shall at all times be available for examination and audit wherever any of said records, documents, files, materials, or property may be.

12 C.F.R. § 563.170(c) (1990). Although the statute's use of the term "property" might be interpreted to include the chattels demanded by the Grand Jury, the Court finds that such chattels are not "records" within the meaning of 12 C.F.R. § 563.170(c). Furthermore, it appears from the pleadings before the Court that there is no question that the required records exception cannot and does not apply to the items listed in the subpoenas that are not documents.

does not lend itself to analytical precision, the nature of the relationship between a cattle dealer and the [Packers and Stockyards] Administration appears sufficient to imbue the financial records here with a 'public aspect.' " *Id.* at 1333. Indeed, the court found that because of the "keen health, safety, and economic interests of consumers, dealers, and regulators", the sought records had a public aspect absent Lehman's making "a credible case that the statute or its execution in this instance attempt[s] to treat as public records any records that are inherently private." *Id.* The Government has demonstrated its need to protect consumers and ensure the health and safety of financial institutions sufficiently to require production of the sought documents, and Respondents have not made a credible case that the subpoenas at issue here represent an "attempt to treat as public records any records that are inherently private."

In the present case, the Court finds that the required records exception to the Fifth Amendment privilege against self-incrimination applies, and that Respondents cannot resist the Grand Jury subpoenas by invoking the act of production doctrine. Accordingly, the Government's Motion to Reconsider must be GRANTED.

### III. *Conclusion.*

For the reasons stated above, the Court finds that the Government's motion for reconsideration should be, and it hereby is, GRANTED, that the Court's Order of July 10, 1991 is hereby VACATED, and that the subpoenas served upon Respondents be ENFORCED forthwith.

SO ORDERED.