## In re GRAND JURY SUBPOENA DATED NOVEMBER 12, 1991.

### No. FGJ 91–5.

United States District Court, S.D. Florida.

Feb. 7, 1992.

the court in *Coweta County Hospital* discussed at length above.

**12.** 42 U.S.C. § 291i(d)(1).

**13.** See, supra Note 5, and accompanying text.

Cheryl Bell, Asst. U.S. Atty., S.D.Fla., Miami, Fla., for plaintiff.

Delta Anne Davis, Aubrey B. Harwell, Jr., and James G. Thomas, Nashville, Tenn., for defendant.

## ORDER

MARCUS, District Judge.

THIS CAUSE comes before the Court on David L. Paul's Motion to Quash Subpoena Duces Tecum. David L. Paul is the former Chairman and Chief Executive Officer of CenTrust Bank ("CenTrust"). He has been served with two subpoenas, both dated December 19, 1991. One subpoena is clearly directed to Paul in his capacity as custodian of records for CenTrust and other commercial entities; the other subpoena names Paul in his individual capacity.[1] Each subpoena demands "all documents which reflect or relate to" transactions between Paul, CenTrust, a variety of commercial entities involving Paul, and services and goods supplied to various real property and vessels.

Mr. Paul was informed by a letter dated November 12, 1991 that he is the target of a federal grand jury investigation of "violations of federal criminal law arising out of the business and financial activities of CenTrust Bank and its related corporations." Among the crimes being investigated are included bank fraud, misappropriation of bank funds and property and false entries on bank records.

On December 6, 1991 David Paul filed a Motion to Quash Subpoena Duces Tecum. The Motion recites three alternative grounds for quashing the subpoena: (1) compliance will violate Mr. Paul's fifth amendment privilege against incrimination; (2) the subpoena is overly broad and unduly burdensome; (3) compliance with the subpoena will constitute violation of Fla.Stat. § 655.057, a third degree felony.

After lengthy hearings held December 18–19 this Court entered an ore tenus order denying in part Paul's motion to quash and ordering partial compliance with the subpoenas. Additionally, Paul was required to submit further information for *in camera* and *ex parte* review by the Court. For analytical purposes we divided the subpoenaed documents into several categories. The first group contained clearly corporate documents,[2] including principally certain corporate records of CenTrust and CenTrust subsidiaries, documents that under the collective entity doctrine could be compelled from a corporate custodian under *Braswell v. United States*, 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988). Also included in the subpoenaed materials were other corporate, non-CenTrust, records. Paul has conceded that among the materials subpoenaed are included what he characterized as "personal copies of various CenTrust records." Paul's Memorandum of Law In Support of Motion to Quash, at 3. Paul adds that the majority of the records sought are copies of CenTrust records, "the originals of which are in the possession of a governmental agency, the Resolution Trust Corporation (RTC)." *Id.* at 4. We observe at the outset that, based on our review of all the materials, testimony and evidence presented, it is not at all clear that the RTC is in possession of all

---

1. The motion to quash was initially filed in response to the subpoena dated November 12, 1991 which indicated in its body that the subpoena was directed to Mr. Paul in both his individual and representative capacities. The government subsequently served two superseding subpoenas dated December 19, 1991, and Paul's counsel accepted service of those subpoenas. *See* Sealed Order of December 23, 1991 at 1.

2. The "corporate records" group includes documents from CenTrust; Paul Properties Orono; David Paul Properties, Inc.; Paul Properties Great Neck; DLP, Inc.; Paul Realty; David Paul Properties, Ltd.; Votrtex Construction; Westport; 666 Realty; Paul Properties Foxhill; KPF Holding Co.; Paul Properties Nutley 1; Paul Properties Nutley 2; Paul Properties Nutley 3; Paul Properties Richfield; and Zev Baufman Theater.

the documents sought by the subpoena. Other categories included documents Paul claimed were purely personal in nature. Still other documents fell into a gray area somewhere in between. *See In re Sealed Case*, 877 F.2d 83, 87–89 (D.C.Cir.1989), *cert. denied, Roe v. United States*, 493 U.S. 1044, 110 S.Ct. 839, 107 L.Ed.2d 834 (1990). The primary issue was the United States' claim that under the collective entity doctrine and *Braswell* Paul was precluded from asserting the privilege against self-incrimination as to corporate documents he obtained in his capacity as Chief Executive Officer and Chairman of the Board of CenTrust. Over the objections of counsel for David Paul, we found *Braswell* applicable and ordered the production of the CenTrust documents in David Paul's possession. As to these documents, the clearly corporate documents, the Court ordered Paul to produce the CenTrust documents in three stages, on January 24, 1992, February 14, 1992 and February 28, 1992 in order to facilitate the production.

As to the other clearly corporate or collective entity documents, as to which Paul was corporate custodian, Paul was ordered to produce them as well by February 28, 1992. Finally, as to any remaining category or categories of documents encompassed by the subpoena, and directed to Paul, Paul was directed to file *ex parte, in camera* on or before February 28, 1992 a list of documents withheld pursuant to a claim of privilege and a particularized explanation as to why the privilege is believed to apply. The basis for our ruling was stated on the record on December 19, 1991. That ruling was memorialized in the Court's Sealed Order of December 23, 1991,[3] and its rationale is further explicated now. We begin by observing that the Supreme Court has recently revisited and underscored the historic power and role of the federal grand jury. *See United States v. R. Enterprises, Inc.*, —— U.S. ——, 111 S.Ct. 722, 112 L.Ed.2d 795 (1991). The Court observed that the grand jury "is an investigatory body

---

3. The Sealed Order of December 23, 1991 stated as follows:

The above-styled cause is before the Court on the Motion to Quash Subpoena *Duces Tecum* filed by David L. Paul ("Paul") on December 6, 1991. The Court heard argument and received the *ex parte* submissions of both parties on December 18 and 19, 1991. After due consideration of the premises, and for the reasons stated in open court on December 19, 1991, the Court now

ORDERS and ADJUDGES as follows:

1. The subpoena dated November 12, 1991, as to which the motion to quash was filed, has been superceded by two subpoenas (Control Nos. E12 and F12) dated December 19, 1991. The Court will treat the motion to quash filed by Paul on December 6, 1991 as being made in connection with these two superceding subpoenas.

2. As to the documents of CenTrust and the other collective entities, including Paul's personal copies of those documents, which are responsive to the subpoena directed to Paul as Custodian of Records (Control No. F12), the Court finds that Paul holds those records in a representative capacity and has no Fifth Amendment privilege to refuse to produce them pursuant to *Braswell v. United States*, 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988), and accordingly, Paul's Motion to Quash be and the same is hereby DENIED as to said documents.

3. Paul is hereby ordered to produce the documents of CenTrust, including his personal copies of them, in three stages, on January 24, 1992, February, 14, 1992, and February 28, 1992. All such documents must be produced by February 28, 1992.

4. Paul is further ordered to produce the documents of collective entities other than CenTrust which are responsive to the subpoena by February 28, 1992.

5. Pursuant to the agreement of the United States, Paul may produce the records described in paragraphs 3 and 4 above by having his attorneys turn them over to FBI Special Agent Daniel J. Walker in Miami, Florida. The United States is directed to review the documents within a reasonable time, to reserve any originals and copy any documents deemed necessary, and to return the documents or copies thereof to Paul when the review is finished. The United States shall afford Paul's attorneys reasonable access to the documents during the course of this review.

6. As to any remaining documents encompassed by the subpoena directed to Paul in his individual capacity (Control No. E12), the Court reserves ruling on Paul's Motion to Quash, and directs Paul to file, *ex parte* and *in camera*, on or before February 28, 1992, a list of documents being withheld pursuant to a claim of privilege and a particularized explanation as to why the privilege is believed to apply.

7. This Court will enter an Order further explicating its ruling.

Sealed Order of December 23, 1991.

charged with the responsibility of determining whether or not a crime has been committed," *id.* 111 S.Ct. at 726, and that "[a]s a necessary consequence of its investigatory function, the grand jury paints with a broad brush." *Id.* The Court wrote:

> The teaching of the Court's decisions is clear: A grand jury "may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials," . . . .

*Id.* (quoting *United States v. Calandra,* 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974)).

Our analysis of the issues presented in the instant case properly starts with *Braswell v. United States,* 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988). *Braswell* held that despite the development of the act-of-production regime for self-incrimination privilege enunciated in *Fisher v. United States* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) and in *United States v. Doe,* 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), the "collective entity rule,"—that for Fifth Amendment purposes, corporations and collective entities are treated differently from individuals—retains its vitality. In *Braswell* a federal grand jury had issued a subpoena to Randy Braswell, the President of Worldwide Machinery, Inc. and Worldwide Publishing Inc., to produce records of the two corporations. *Braswell,* 487 U.S. at 100–01, 108 S.Ct. at 2285–86. Mr. Braswell owned one hundred percent of both corporations, and he moved to quash the subpoena on the grounds that the act of producing the documents would incriminate him in violation of his Fifth Amendment privilege against self-incrimination. *Id.* The Court reviewed the history and nuances of the collective entity rule and wrote as follows: "whether the subpoena is addressed to the corporation, or as here, to the individual in his capacity as a custodian, see *Dreier [v. United States,* 221 U.S. 394, 31 S.Ct. 550, 55 L.Ed. 784 (1911)], *supra, Bellis [v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974)], *supra,* a corporate custodian such as petitioner may not resist a subpoena for corporate records on Fifth Amendment grounds." *Braswell,* 487 U.S. at 108–09, 108 S.Ct. at 2290.

The Supreme Court directly addressed the Petitioner's arguments that the collective entity rule was abolished by *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) and *United States v. Doe,* 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), cases which had established the act-of-production regime under the Fifth Amendment. The Court wrote:

> In essence, petitioner's argument is as follows: In response to *Boyd v. United States,* 116 U.S. 616, [6 S.Ct. 524, 29 L.Ed. 746 (1886)], with its privacy rationale shielding personal books and records, the Court developed the collective entity rule, which declares simply that corporate records are not private and therefore are not protected by the Fifth Amendment. The collective entity decisions were concerned with the contents of the documents subpoenaed, however, and not with the act of production. In *Fisher* and *Doe,* the Court moved away from the privacy based collective entity rule, replacing it with a compelled testimony standard under which the contents of business documents are never privileged but the act of producing the documents may be. Under this new regime, the act of production privilege is available without regard to the entity whose records are being sought.

*Braswell,* 487 U.S. at 109, 108 S.Ct. at 2290. The Court observed that while *Doe* and *Fisher* undeniably "embarked on a new course of Fifth Amendment analysis," *id.,* "the agency rationale undergirding the collective entity decisions, in which custodians asserted that production of entity records would incriminate them personally, survives." *Id.* The Court held that the corporate entity doctrine survived *Doe* and *Fisher,* and that "a custodian's act of production is not deemed a personal act, but rather an act of the corporation." *Id.* at 110, 108 S.Ct. at 2291. The Court wrote:

From *Wilson* [*v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911)] forward, the Court has consistently recognized that the custodian of corporate or entity records holds those documents in a representative rather than a personal capacity. Artificial entities such as corporations may act only through their agents, *Bellis, supra* 417 U.S. at 90, [94 S.Ct. at 2184] and a custodian's assumption of his representative capacity leads to certain obligations, including the duty to produce corporate records on proper demand by the Government. Under those circumstances, the custodian's act of production is not deemed a personal act but rather an act of the corporation. Any claim of Fifth Amendment privilege asserted by the agent would be tantamount to a claim of privilege by the corporation—which of course possesses no such privilege.

*Id.* 487 U.S. at 109–10, 108 S.Ct. at 2291.

Notably, the Court ruled that the rationale for excluding a custodian's production from the act-of-production necessarily constrains the evidentiary use of the fact that the individual produced the demanded documents. The Court reasoned that

> [b]ecause the custodian acts as a representative, the act is deemed one of the corporation and not the individual. *Therefore, the Government concedes, as it must that it may make no evidentiary use of the "individual act" against the individual.*

*Id.* at 118, 108 S.Ct. at 2295 (emphasis added).[4] Accordingly, when a custodian produces subpoenaed corporate records, the act of production of these records cannot be used against him at trial.

It is undisputed that at the time Mr. Paul obtained the CenTrust corporate documents at issue he was both Chief Executive Officer and Chairman of the Board of that corporation and was clearly a "custodian" for Fifth Amendment purposes. Undeniably he was an agent of the corporation

when he obtained custody of the documents. He was subsequently removed from his position at the bank, and, notably, when he left the bank in February of 1990, he took with him copies of various CenTrust corporate documents. Indeed, the majority of the records sought by subpoena are CenTrust records. The Court of Appeals for the District of Columbia has recently adopted a broad definition of "custodian": "[W]e interpret 'custodian' to encompass any agent of the corporation who under ordinary principles of corporate law has custody or control over corporate documents." *In re Sealed Case,* 877 F.2d at 86; *cf. In the Matter of Grand Jury Proceedings 89–8,* 742 F.Supp. 1154, 1155 (S.D.Fla.1990) (Spellman, J.) ("In essence the Court holds that any person with custody over corporate records is a records custodian.")

Mr. Paul argues, however, that by leaving CenTrust he lost his status and character as custodian of records for collective entity purposes, notwithstanding having obtained the records in the first place in connection with his duties as Chief Executive Officer and Chairman of the Board, and notwithstanding having taken them with him upon leaving. Therefore, he argues, *Braswell* is inapplicable. Among other things, Petitioner relies upon *In re Grand Jury Subpoenas Duces Tecum (Saxon),* 722 F.2d 981 (2d Cir.1983). The Second Circuit offered the following analysis of the application of the collective entity doctrine to a former employee:

> It is true that if the witness were still a Saxon officer or employee he would normally be obligated as a representative of the company to produce its documents, regardless of whether they contained information incriminating him, or were written by him as a corporate officer. But that is because there would rarely be any dispute over possession when the person subpoenaed is required to respond in his representative capacity. In pro-

---

**4.** The *Braswell* Court explicitly left open the question "whether the agency rationale supports compelling a custodian to produce corporate records when the custodian is able to establish, by showing for example that he is the sole employee and officer of the corporation, that

the jury would *inevitably* conclude that he produced the records." *Id* 108 S.Ct. at 2295 n. 11 (emphasis added). In a corporation as large as CenTrust, Paul's production certainly would not "inevitably" lead to the conclusion that Paul was the person who produced the records.

ducing records as an officer of the company he would not be attesting to his personal possession of them but to their existence and possession by the corporation, which is not entitled to claim a Fifth Amendment privilege with respect to them.

Once the officer leaves the company's employ, however, he no longer acts as a corporate representative but functions in an individual capacity in his possession of corporate records.

*Saxon,* 722 F.2d at 986–87 (citations omitted). Paul argues that this reasoning in *Saxon* prevents the application of the collective entity rationale to Paul. *Braswell,* Paul maintains, is predicated on the following rationale: "Because the custodian acts as a representative, the act is deemed one of the corporation, and not the individual." *Braswell,* 487 U.S. at 118, 108 S.Ct. at 2295. If *Saxon* means that a custodian disassociated from his corporation "no longer acts as a corporate representative," *Saxon,* 722 F.2d at 986–87, and *Braswell* is only valid because the custodian is a representative and thus the custodian's production is deemed the corporation's production, Paul insists, *Braswell* is inapplicable to the facts in the instant case.

We disagree. It is worth noting first that *Saxon* is not binding precedent. Second, notably, *Saxon* was decided prior to the Supreme Court's opinion in *Braswell,* and we believe that reading *Saxon* as Paul proposes would directly undermine the holding of *Braswell,* and prevent any reasonable effort by a grand jury to have access to what are clearly corporate records. Adherence to Paul's cramped interpretation would enable, and perhaps encourage, a corporate officer who received plainly corporate documents while serving in a singularly important corporate capacity, and who feared investigation or indictment, to abscond with records and quit his position. The subpoenaed ex-officer could then simply refuse to produce corporate records, even if these were the only corporate records available, based on fear that the act of production of the documents would tend to prove misappropriation of those documents, or that he had knowledge of their contents. *See Saxon,* 722 F.2d at 987.

The documents primarily at issue are clearly corporate in nature, such as minutes of the board of directors of the corporation, obtained by the Chief Executive Officer and Chairman of the Board of the corporation during his tenure as Chief Executive Officer and Chairman of the Board. To allow Paul to invoke the privilege, which he undeniably would be unable to invoke were he still Chief Executive Officer of CenTrust, would be tantamount to allowing CenTrust itself to assert the privilege, and would offer those fearing valid inquiry an obvious path to shield forever documents vital to the grand jury's investigation. As the Supreme Court wrote in *Braswell,* "If custodians could assert a privilege, authorities would be stymied not only in their enforcement efforts against those individuals but also in their prosecutions of organizations." *Braswell,* 487 U.S. at 115–16, 108 S.Ct. at 2294. To allow both the corporation and the custodian to shield records from the grand jury merely because the chief executive officer has left his post, would allow both to assert a privilege that *Braswell* plainly establishes neither enjoy. Such formalism "would undermine one of the policy values regularly invoked on [the collective entity rule's] behalf—that of facilitating the enforcement of criminal laws against collective organizations and their employees." *In re Sealed Case,* 877 F.2d at 86 (citing *Braswell,* 487 U.S. at 115–16 & n. 9, 108 S.Ct. at 2294–95 & n. 9). We note again that the documents at issue are clearly corporate records, and they came into the lawful possession of the corporation's Chief Executive Officer during his tenure in office. Neither the documents' corporate character, nor the fact that they came into Paul's possession in a representative capacity, has changed simply because Paul left the bank at a later time.

Moreover, and perhaps most important, the primary concern guiding the *Saxon* opinion—that the act of production by the custodian could be used against him individually—has been ameliorated by *Braswell.* The *Saxon* court was concerned

that the subpoenaed witness here has advanced a colorable claim that his formal testimonial admission by his production of the documents that he possesses them would tend to corroborate evidence that he misappropriated this evidence from Saxon; it would thus enable the government to argue in any criminal proceeding against him that his removal of the documents from the company's files amounted to a tacit admission that he had knowledge of their incriminating contents and absconded with them because he believed they were "smoking gun" evidence of his guilt.

*Saxon*, 722 F.2d at 987. As discussed above, in *Braswell* the Supreme Court held that the Government "may make no evidentiary use of the 'individual act' against the individual." *Braswell*, 487 U.S. at 118, 108 S.Ct. at 2295, and thus eliminated this primary concern undergirding *Saxon*. We add that the government has agreed in the instant case that it would accept production of the records from Paul's counsel, who, in turn, would only be required to turn them over to FBI Special Agent Daniel J. Walker. *See* Sealed Order of December 23, 1991 at 2.

We are not the first court to hold that the corporate entity rule applies to former officers where the subpoenaed records plainly are corporate in nature, and where they were obtained by the officer during his tenure. The Eighth Circuit in *In re Grand Jury Subpoena (85–W–71–5)*, 784 F.2d 857, 861 (8th Cir.1986), *cert. dismissed*, 479 U.S. 1048, 107 S.Ct. 918, 93 L.Ed.2d 865 (1987) [hereinafter *"Westech"*], rejected the notion that the corporate entity rule was somehow limited to current employees, and the case supports the view that the collective entity rule applies to a custodian who may be a former employee. In *Westech*, the appellant was an attorney who had obtained records of Westech Corp. ("Westech") from her client Alan R. Cunningham, a former officer of Westech.[5] The grand jury subpoenaed the documents from the appellant, who moved to quash. In a section headed "The Collective Entity Rule," the Eighth Circuit held that "[p]roduction of corporate records by Cunningham, or by appellant as his attorney, would be an action taken in his representative capacity only, either as *former corporate officer* or as a trustee of the defunct Westech Corp., and not as an individual." *Westech*, 784 F.2d at 861 (emphasis added). Moreover, the *Westech* Court quoted *Saxon*, and inserted the word "former," applying *Saxon*'s discussion of the collective entity rule to former officers as well as current officers. The Eighth Circuit wrote:

"In producing records as a [former] officer of the [corporation, Cunningham] would not be attesting to his personal possession of them but to their existence and possession by the corporation, which is not entitled to claim a Fifth Amendment privilege with respect to them." *Id.* at 986. Thus under these circumstances, production of the records would not be a compelled, incriminating, testimonial communication by Cunningham as an individual.

784 F.2d at 861 (all brackets in original) (citing and quoting *Saxon*, 722 F.2d at 986).[6]

We note, moreover, that in *In the Matter of Grand Jury Proceedings 89–8* the District Court held that one who holds corporate documents is a custodian for purposes of a grand jury subpoena, even if the holder of the documents was not shown to be or have been an "officer, director, employee, corporate representative or designated records custodian." 742 F.Supp. 1154, 1155 (S.D.Fla.1990) (Spellman, J.). Though no fifth amendment issue was presented, the Court accepted the Government's argu-

---

**5.** It is clear from the Court's opinion that Westech was defunct at the time the opinion was rendered, and that Henderson was no longer an officer.

**6.** We observe that at the same time the *Westech* Court decided that the collective entity rule applied to former officers, the Court also held, in that pre-*Braswell* opinion, that the act of production by the individual pursuant to the collective entity rule rendered the act of production inadmissible against the individual. Thus, the Eighth Circuit was relieved of the policy concerns that guided the Second Circuit in *Saxon* to its conclusion, exactly as *Braswell* subsequently removed this policy consideration permanently.

ment that the duty to comply with a subpoena rested not upon titles, but "rather on the theory that any person who obtains possession or custody of corporate records by virtue of functions performed on behalf of the corporation is its agent, and *therefore, holds the records in a representative capacity.*" *Id.* (emphasis added).

The conclusion that the termination of Paul's employment with CenTrust does not terminate his role as representative for fifth amendment purposes, where plainly corporate records were obtained by him when he held the highest positions in the corporation, is supported by the line of cases holding that dissolution of a corporation does not end a former officer's representative capacity. *See, e.g., Wheeler v. United States,* 226 U.S. 478, 33 S.Ct. 158, 57 L.Ed. 309 (1913); *Grant v. United States,* 227 U.S. 74, 33 S.Ct. 190, 57 L.Ed. 423 (1913). In *Wheeler* the Supreme Court wrote that despite the dissolution of company, "this did not change the essential character of the books and papers." 33 S.Ct. at 162. "Such books and papers still remained subject to inspection and investigation, and no constitutional right of the defendants was violated when, being found in possession of the documents, they were required to produce them for inspection of the grand jury." *Id.* Contrary to Paul's contention that these cases perished with the advent of the act-of-production analysis, the Second Circuit relied upon these cases in a case decided after *Fisher* and *Doe* and held that "[d]issolution does not furnish a corporate representative any greater claim to fifth amendment privilege." *In re Grand Jury Subpoenas Issued to Thirteen Corps.,* 775 F.2d 43, 47–48 (2d Cir.1985), *cert. denied, Roe v. United States,* 475 U.S. 1081, 106 S.Ct. 1459, 89 L.Ed.2d 716 (1986).[7]

For the reasons stated in the record, after hearing the oral arguments of coun-

sel and considering various *ex parte* submissions and *ex parte* testimony, we concluded that the subpoenas requested material documents and were not overbroad or oppressive. "The moving party has the initial task of demonstrating to the court that he has some valid objection to compliance." *United States v. R. Enterprises,* 111 S.Ct. at 730 (Stevens, J., concurring). On the record before the Court, Paul has not met his burden as to records clearly corporate in nature which he obtained while serving as CenTrust's Chairman and Chief Executive Officer. In making this determination, this Court has considered extensive *ex parte* testimony provided by FBI Special Agent Daniel J. Walker, and various *ex parte* exhibits submitted in support of that testimony. The Court also considered *ex parte* submissions made by Petitioner. No objection to the use of *ex parte* evidence was raised by either party. *See In re Grand Jury Matter of Yale Freeman,* 708 F.2d 1571, 1576 (11th Cir. 1983) ("It is settled ... that the cautious use of *in camera* proceedings is appropriate to resolve disputed issues of privilege."); *In re Grand Jury Proceedings 88–9,* 899 F.2d 1039, 1041 (11th Cir.1990) (Court observes without comment that *in camera* evidence submitted); *In re Grand Jury (G.J. No. 87–03–A),* 845 F.2d 896, 898 (11th Cir.1988) (same).

Finally, at oral argument, counsel for Paul retracted the third ground for the motion to quash, that compliance would render Paul in violation of state law. *See In Re Grand Jury Matter,* 762 F.Supp. 333 (S.D.Fla.1991) (Hoeveler, J.).

DONE AND ORDERED.

---

7. Paul offers several cases decided after *Braswell* that have relied upon or cited *Saxon.* First, reference to *In re Grand Jury Subpoenas Dated June 27, 1991* is unavailing. 772 F.Supp. 326, 329–30 (N.D.Tex.1991). Though the district court in that case recounted the witness' *Saxon*-based argument, the Court did not rely on *Saxon* in enforcing the government's subpoenas; rather the district court found that the "re-

quired-records" exception to the Fifth Amendment compelled the production of the subpoenaed documents. *Id.* at 331–34. The bankruptcy cases cited by Petitioner rely upon *Saxon* but add little to its analysis. *See In re Toyota of Morristown, Inc.,* 120 B.R. 925, 928–929 (Bankr. E.D.Tenn.1990); *In re ICS Cybernetics,* 107 B.R. 821, 830–31 (Bankr.N.D.N.Y.1989).